## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF WISCONSIN

---

Patricia A. Wilson
211 Country Dr., Unit 30
Montello, WI 53949                          Case No.: 26-CV-68
           Plaintiff

Vs.

JKB Financial, Inc.
d/b/a Level Debt,
970 Reserve Drive, Suite 201
Roseville, CA 95678

And

US Educational Financial Solutions, Inc.
d/b/a Level Coaching
970 Reserve Drive, Suite 201
Roseville, CA 95678

And

MBOCAL, Inc.
d/b/a Level Lending
d/b/a/ Level Financing
d/b/a NuBreak
970 Reserve Drive, Suite 201
Roseville, CA 95678

And

Kenneth Bartlett
3136 Joshua Tree Cir
Stockton, CA 95209

And

William Torrey Osborne
2975 Anastasia Way
Lincoln, CA 95684

1

And

Set Forth, Inc.
d/b/a Forth, Inc.
f/k/a Debt Pay Gateway, Inc.
1900 E. Golf Road, Suite 500
Schaumburg, IL 60173

And

Kris Kehler
8220 Red Bark Ln
Cary, IL 60013-6116.

And

Premier Legal, Inc.
9565 Waples St., Suite 200
San Diego, CA 92121

And

Pinnacle Legal
970 Reserve Dr. Ste 201
Roseville, CA 95678

And

Vincent Renda
6104 Camino Selva,
Rancho Santa Fe, CA  92067

## COMPLAINT

Plaintiff, Patricia Wilson by her attorneys, Angel Rose Kwaterski of Legal Action of Wisconsin, Inc. and Heidi N. Miller of HNM Law, LLC, alleges as follows as a Complaint against all Defendants.

2

## INTRODUCTION

This case involves an illegal and deceptive debt settlement and credit repair scam perpetrated on an elderly person by Defendants, including an unregistered debt settlement company, its employees, and its attorney network who swindled the plaintiff through telemarketing fraud. Defendants violated numerous federal and statute statutes, regulations, and codes, including without limitation, the federal Credit Repair Organization Act, the federal Telemarketing Sales Act, the Wisconsin Consumer Act, Wisconsin's Direct Marketing Act, and statutes enacted to prevent fraud on elderly and vulnerable persons.

## PARTIES

1. Plaintiff, Patricia Wilson, is a 72-year old natural person and a citizen of Wisconsin residing at 211 Country Dr., Unit 30, Montello, Wisconsin, in Marquette County.

2. Defendant JKB Financial, Inc., is a for-profit California corporation d/b/a Level Debt. (NMLS 2006618) (hereinafter "Level Debt") with a principal place of business located at 970 Reserve Drive, Suite 201, Roseville, CA 95678.

3. At all relevant times Level Debt was engaged in the business of providing debt adjustment or debt settlement services to consumers, including allegedly negotiating with creditors on behalf of consumers owing consumer debts in order to reduce or settle debt.

4. Defendant US Educational Financial Services, Inc., is, upon information and belief, a for profit California corporation that is doing business as USEFS and

3

Level Coaching. (hereinafter referred to as "Level Coaching") The principal place of business for USEFS is located at 970 Reserve Drive, Suite 201, Roseville, CA.

5. Defendant MBOCAL is, upon information and belief, a for-profit California Corporation that is doing business as Level Lending, Level Financing and Nubreak. (hereinafter referred to as "MBOCAL") The principal place of business for MBOCAL is located at 970 Reserve Drive, Suite 201, Roseville, CA 95678. NMLS 1196442

6. Defendant Jason Kenneth Bartlett, whose home address is 3136 Joshua Tree Cir, Stockton, CA 95209, is and, at all relevant times, was the Chief Executive Officer Level Lending, LP, MBOCAL, Level Debt and USEFS.

7. Defendant William Torrey Osborne (CFO), whose home address is 2975 Anastasia Way, Lincoln CA 95684, is and, at all relevant times, was the Chief Financial Officer of MBOCAL, Inc, Level Debt and USEFS.

https://www.linkedin.com/in/torrey-osborne-51b45b50/

8. Defendant Set Forth, Inc. is a Delaware corporation with a principal place of business located at 1900 E. Golf Road, Suite 550, Schaumburg, IL 60173 Set Forth also does business as Forth and is formally known as Debt Pay Gateway. Forth provided the dedicated account Level used to hold Ms. Wilson's funds.

9. At all relevant times, Defendant Kris Kehler was the Co-Founder and Chief Executive Officer of Forth. Upon information and belief, his home address is 8220 Red Bark Ln, Cary, IL 60013-6116.

4

10. Upon information and belief, Defendant Premier Legal Inc., is a law firm with a principal place of business located at 9565 Waples Street, Suite 200, San Diego, CA 92121.

11. At all relevant times, Defendant Vincent Renda was the Chief Executive Officer, Secretary and Chief Financial Officer of Premier Legal, Inc. and was the attorney that communicated with Ms. Wilson regarding her debt enrolled from her agreement with Level Debt and the lawsuit brought by Capital One.

12. Defendant Pinnacle Legal is a law firm located at 9565 Waples Street, Suite 200, San Diego, CA 92121.

13. Defendant, Vincent Renda is the registered agent for Pinnacle Legal and was the attorney that communicated with Ms. Wilson regarding her enrolled debts.

14. At all relevant times, Defendant Level Debt gave Pinnacle Legal a Power of Attorney on behalf of Ms. Wilson relating to any legal proceedings in connection with any and all debts allegedly due and owing in her name.

15. Upon information and belief, Pinnacle Legal, at all relevant times, did not employ an attorney who was authorized to practice law in Wisconsin.

16. The transactions and occurrences giving rise to this action occurred in the City of Montello, County of Marquette, State of Wisconsin.

17. Venue is proper in the Eastern District of Wisconsin.

## FACTUAL ALLEGATIONS

<u>Level Debt Background and Relationship with Co-Defendants</u>

18. Level Debt is a professional debt settlement organization that was formed on June 15, 2007, under the laws of California, by Defendant Jason Kenneth Bartlett. (See Wilson Exh. 0001).

19. Level Debt claims that since 2009, it has successfully settled debts for over 20,000 Level clients. [1]

20. Level Debt advertises that they offer an "affordable solution for debt relief."

21. Level Debt advertises that, "Level Debt has experience to negotiate settlements on your behalf, providing real savings and a fresh start."

22. Level Debt advertises itself as "'accredited experts' who provide customized debt solutions and personalized services to help you the Level Defendants a debt free lifestyle."

23. Defendant Level Coaching was incorporated on or about October 26, 2010, by William T. Osborne. (See Wilson. Exh. 0002).

24. Level Coaching advertises that "The Finance Coaching Program at Level Coaching has been used by over 25,000 individuals to reshape and optimize their financial health for over the last 15 years. Level has a team of certified Personal Finance experts, including Fincert® certified Personal Finance Educators and

---

[1] https://level-debt.com/debt-settlement-plan/

6

Coaches, who are all committed to the highest level of service and client integrity." [2]

25. In or around April 29, 2014, Defendant MBOCAL was incorporated in the State of California by Kathleen Henderson. (See Wilson Exh. 0003.)

26. On or about November 2, 2022, an Amendment to the Articles of Incorporation were filed by Jason Kenneth Bartlett, alleging to be the President and Secretary of MBOCAL. (See Wilson Exh. 0004)

27. On or about January 28, 2025, Kathy Henderson filed a Statement of Information Corporation with the State of California Secretary of State stating that Jason Bartlett was the Chief Executive Officer, Chief Financial Officer and Secretary for MBOCAL and Vincent Renda as the registered agent. (See Wilson Exh. 0005.)

28. On or about March 31, 2025, William Osborne filed a Statement of Information Corporation with the State of California Secretary of State stating that Jason Bartlett was the Chief Executive Officer, and William Osborne was the Chief Financial Officer and Secretary for JKB Financial. (See Wilson Exh. 0006.)

29. Defendants Level Debt, Level Coaching and MBOCAL have operated as a common enterprise while engaging in the unlawful acts and practices described below through an interrelated network of companies that have common ownership, officers, business functions, employees, managers, and office

---

[2] https://level-coaching.com/one-on-one-financial-coaching/

7

locations, and have comingled funds. Because they operate as a common enterprise, each of them is liable for the acts and practices alleged below.

30. Defendants Level Debt, Level Coaching and MBOCAL have solicited consumers, including Ms. Wilson and other consumers in Wisconsin, through advertising, including numerous Internet websites.

31. Defendants have operated several websites, including but not limited to www.level-debt.com www.level-coaching.com, www.levelfinancing.com, www.usefs.com.

The Renda Group

32. Defendant Vincent Renda is an Attorney licensed in the State of California. See attached as Wilson Exh. 0007.

33. Defendant Vincent Renda filed Articles of Incorporation of a Professional Corporation on or about November 08, 2018, for Premier Legal, Inc. Upon information and belief, Defendant Vincent Renda is the Chief Executive Officer, Secretary and Chief Financial Officer for Premier Legal. See attached as Wilson Exh. 0008.

34. At all relevant times, Premier Legal was engaged in the business of providing services to consumers, including allegedly negotiating with creditors on behalf of consumers owing debts to reduce or settle debt.

35. At all relevant times, Premier Legal was a merchant who, with respect to the extension of credit by others, sold, provided or performed, or represented that

8

Premier Legal, Pinnacle Legal, Level Debt and Level Coaching would sell, provide or perform, in return for the payment of money, the services of: 1) improving a buyer's credit record, credit history or credit rating; or 2) arranging for or obtaining an extension of credit for a buyer; or providing advice or assistance to a buyer regarding these alleged services.

36. Defendant Vincent Renda filed Articles of Incorporation of a Professional Corporation on or about November 09, 2020, for Pinnacle Legal, P.C. Upon information and belief, Defendant Vincent Renda is the Chief Executive Officer, Secretary and Chief Financial Officer for Pinnacle Legal. (See Wilson Exh. 0009).

37. Defendant Pinnacle Legal maintains a website located at www.pinlegal.com.

38. At all relevant times, Pinnacle Legal was engaged in the business of providing services to consumers, including allegedly negotiating with creditors on behalf of consumers owing debts to reduce or settle debt.

39. At all relevant times Pinnacle Legal advertised itself as a debt settlement law firm that has been assisting consumers and business owners with debt for nearly two decades.

40. As part of their practice, Defendant Pinnacle Legal offers a debt settlement program and encourages clients to enroll with them because they have "impeccable relationships with the creditors and collection agencies. You will also receive full legal representation with an attorney in your state for your protection. As well as specializing in FDCPA (Fair Debt Collection Practices Act) violations to assist in getting you the best settlements possible."

9

41. At all relevant times, Pinnacle Legal was a merchant who, with respect to the extension of credit by others, sold, provided or performed, or represented that Pinnacle Legal, Level Debt and Level Coaching would sell, provide or perform, in return for the payment of money, the services of: 1) improving a buyer's credit record, credit history or credit rating; or 2) arranging for or obtaining an extension of credit for a buyer; or providing advice or assistance to a buyer regarding these alleged services.

42. At all relevant times, Pinnacle Legal advertised itself as a law firm with experienced attorneys to defend against lawsuits from banks and other creditors.

43. According to their website, Defendant Pinnacle Legal employs three attorneys: Defendant Vincent Renda, Principal Attorney; Robert W. Wright, and Jonathan Choi. [3]

44. Defendants Premier Legal, Inc. and Pinnacle Legal have operated as a common enterprise while engaging in the unlawful acts and practices described below through an interrelated network of companies that have common ownership, officers, business functions, employees, managers, and office locations, and have comingled funds. Because they operate as a common enterprise, each of them is liable for the acts and practices alleged below.

45. Upon information and belief, Defendant Renda, at all relevant times, wholly owned and controlled both Premier Legal and Pinnacle Legal.

---

[3] https://pinlegal.com/about-us/our-team/

## Background of the Forth Defendants

46. Forth provides its services to debt settlement companies, including Level Debt, via a servicing agreement, agreeing to provide software for tracking and monitoring custodial accounts on behalf of consumers that purchase debt settlement company's services.

47. Forth acts as a third-party custodian that holds the debt settlement services company's client funds at an insured financial institution for the purpose of paying the debt settlement services company's fees and for making payments to creditors or debt collectors in connection with renegotiation, settlement, reduction or other alteration of the terms of payment or through terms of a debt.

48. Forth holds the funds until it receives confirmation that a debt has been settled on behalf of the debt settlement service company's client.

49. Forth releases the authorized amount of funds to the debt settlement services company client's creditor as well as the appropriate amount of fees due to the debt settlement company.

50. Forth has maintained arrangements with several entities that contract with Wisconsin consumers to provide debt settlement services.

51. Forth has also maintained or entered into contracts with Wisconsin consumers to perform services which include:

   a. Collecting of funds via ACH from the consumer's designated financial institutions;

b. Depositing such funds in custodial accounts;

c. Disbursing funds from the custodial accounts to the consumer's creditors;

d. Disbursing fees to the consumer's designated company;

e. Disbursing funds to third parties based on instructions received from the consumer and/or their designated company;

f. Accepting and acting upon deposit, transfer, and/or payment instructions received from the consumer's designated company; and

g. Executing the consumer's payment instructions in a commercially reasonable manner.

52. Upon information and belief, at all relevant times, Defendant Kehler was the Co-Founder and Chief Executive Officer of Forth.

Defendants' Business Practices in Wisconsin

53. At all relevant times, Level Debt, Level Coaching and MBOCAL (hereinafter referred to as "Level Defendants"), Premier Legal and Pinnacle Legal purposefully availed themselves of the Wisconsin Marketplace and secured benefits of that marketplace by advertising and doing business in Wisconsin with Wisconsin consumers.

54. The State of Wisconsin Department of Financial Institutions ("DFI") regulates adjustment service companies and money transmitters operating in Wisconsin.

55. Under Wisconsin law, the term "adjustment service companies" includes credit counselors, debt management providers, debt settlement or debt relief services,

and any others engaged in the business of negotiating payment reductions or extensions of debtors. [4]Attached as Wilson 0010 is a true and accurate copy of guidance issued by the Wisconsin DFI in 2020.

56. Adjustment Service Companies are required to be licensed and regulated pursuant to Wis. Stat. § 218.02 and DFI-Bkg 73.

57. Forth is a money transmitter under §217.02(17).

58. Forth is not registered in the state of Wisconsin as a money transmitter. (See Wilson Exh. 0011)

59. At all relevant times, the Level Defendants and Forth were members of the industry group, American Association for Debt Resolution (AADR), previously known as the American Fair Credit Council (AFCC).[5]

60. On or about May 1, 2025, the American Association for Debt Resolution and the Consumer Debt Relief Initiative merged to form the Association for Consumer Debt Relief. ("ACDR").

61. At all relevant times, Defendant Kehler, in his position as Co-Founder and CEO of Forth was a Board Member for ACDR. (See Wilson Exh. 0012).

62. On or about July 17, 2023, the AFCC, on behalf of its member organizations submitted a response to the Wisconsin DFI regarding the Statement of Scope to

---

[4] Morgan Drexen, Inc. v. Wis. Dep't of Fin. Insts., 2015 WI App 27, ¶ 11, 361 Wis. 2d 271, 862 N.W.2d 329. Accord Payday Loan Resolution, LLC v. Wis. Dep't of Fin. Insts., 2019 WI App 28, ¶ 21, 388 Wis. 2d 117, 931 N.W.2d 279; JK Harris Fin. Recovery Sys., LLC v. Wis. Dep't of Fin. Insts., 2006 WI App 107, ¶¶ 16-25, 293 Wis. 2d 753, 718 N.W.2d 739.
[5] https://acdr.org/member-list

revise DFI-Bkg 73, a proposed rule to cap fees associated with debt resolution services.[6] (See Wilson 0013).

63.   In that 2023 letter, the AFCC alleges that AFCC members are "today" serving "tens of thousands of Wisconsin customers."

64.   On or about August 3, 2023, the Wisconsin DFI sent an email to the Chairman and Vice Chairman for AADR in response to the public comments submitted by the AFCC.[7] (See Wilson 0014).

65.    In this letter, Wisconsin DFI reiterated the need for "adjustment service companies" to be licensed with the State of Wisconsin.

66.   WI DFI also reiterated the numerous times in which DFI communicated with AADR and its members regarding such requirements, dating back to at least 2020.

67.   WI DFI states that none of the AADR member organizations are licensed as adjustment service companies in Wisconsin.

68.   Level Debt is not, and at relevant times was not licensed or registered in Wisconsin to perform services as an adjustment service company under Wis. Stat. § 218.02.

69.    Level Coaching is not, and at relevant times was not licensed or registered in Wisconsin to perform services as an adjustment service company under Wis. Stat. 218.02.

---

[6] AADR's Comment Letter re: Wisconsin Scope Statement No. 037-23 (July 17, 2023), at 2, 5.
[7] DFI's Letter to AADR (August 3, 2023).

70. MBOCAL is not, and at relevant times was not licensed or registered in Wisconsin to perform services as an adjustment service company under Wis. Stat. § 218.02.

71. Premier Legal is not, and at relevant times was not licensed or registered in Wisconsin to perform services as an adjustment service company under Wis. Stat. § 218.02.

72. Pinnacle Legal is not, and at relevant times was not licensed or registered in Wisconsin to perform services as an adjustment service company under Wis. Stat. § 218.02.

73. The conduct of the Level Defendants was authorized, approved and/or ratified by one or more officers, directors, or managers of Level Debt, Level Coaching or MBOCAL including Defendants Bartlett, Osborne and Renda, and/or Defendants Bartlett, Osborne and Renda knew in advance that the Level Defendants were likely to conduct itself, and allowed them to so act, with conscious disregard of the rights of consumers. The agent(s) or employee(s) of the Level Defendants, Defendant Premier Legal and Defendant Pinnacle Legal, acted within the course and scope of such agency or employment and acted with the consent, permission and authorization of Defendants Bartlett, Osborne and Renda.

74. Upon information and belief, the Level Defendants entered into a Marketing Affiliate Agreement ("the Marketing Affiliate Agreement"), with Premier Legal and Pinnacle Legal.

75. Upon information and belief, the Level Defendants were to be paid for referring to Premier Legal and/or Pinnacle Legal clients.

15

76. Upon information and belief, the Level Defendants were to generate advertising and marketing materials to send and communicate with prospective clients interested in consumer debt services, including consumer credit counseling, debt negotiations and bankruptcy.

77. Upon information and belief these marketing materials would be subject to the approval of Defendant Renda, Premier Legal or Pinnacle Legal. ("Renda Group")

78. Upon information and belief, all sales material, including scripts and training materials must also be approved by the Renda Group.

79. Upon information and belief, the Level Defendants would collect financial information from individuals and perform an initial financial calculation and budget for such person.

80. Upon information and belief, the Level Defendants would then enroll the consumer by having them execute an Agreement for services.

81. Upon information and belief, all consumers who are enrolled by any of the Level Defendants through this method are deemed clients of the Renda Group.

82. Upon information and belief, an agent from the Renda Group would provide all debt negotiations and financial insolvency services to the consumer.

83. Upon information and belief, an agent of the Renda Group would represent the consumers enrolled in the services in any litigation related to the enrolled debt.

84. Upon information and belief, the Level Defendants would be compensated by the Renda Group and/or Forth for enrolling clients in their services.

85. Upon information and belief, Level Debt had previously entered into similar agreements with other entities, such as Orion Processing, LLC. [8]

86. At all times relevant neither Premier Legal, Pinnacle Legal nor any of its lawyers were registered to perform debt settlement or debt adjustment services in the State of Wisconsin.

87. At all times relevant to market consumers in Wisconsin, including Ms. Wilson, Premier Legal and Pinnacle Legal advertised that its debt attorneys represented consumers in Wisconsin by negotiating reductions in their debt and defending them against creditor lawsuits.

88. At all relevant times, neither Premier Legal nor Pinnacle Legal had any attorney in the firms licensed or admitted to practice law in Wisconsin.

89. Level Debt and the Renda Group's conduct included some or all of the following, among other things:

   a. Holding themselves out to the public, including consumers such as Ms. Wilson in Wisconsin, as providing services in the management of debts by affecting the adjustment, compromise, or discharge of any account, note or other indebtedness of its customers;

   b. Holding themselves out as experts in settling unsecured consumer debt for less than what is owed to a creditor;

---

[8] https://ecf.txwb.uscourts.gov/cgi-bin/show_multidocs.pl?caseid=305050&arr_de_seq_nums=3&magic_num=MAGIC&pdf_header=1&pdf_toggle_value=1&exclude_attachments=20474063&zipit=0&arr_de_seq_nums=3&create_roa=&bates_format=&dkt=&got_receipt=1

c. Directing business solicitations into the State of Wisconsin seeking participation in Level Debt's debt settlement program and Level Coaching's financial education program;

d. Contracting in Wisconsin with Wisconsin consumers for various services, including debt settlement or debt adjustment services; and

e. Offering to perform and performing activities for Wisconsin residents, including debt settlement services.

<u>Ms. Wilson's Contract</u>

90. In or around March 2024, Ms. Wilson resided alone, having no spouse or children of her own. Her closest family members were her siblings.

91. Due to the increased cost of living and medical expenses, Ms. Wilson was struggling financially to make ends meet as her sole source of income was Social Security in the approximate amount of $1,362.00.

92. Ms. Wilson was regularly making monthly payments on her bills, including her credit card debts, but began to feel that she was falling too far into debt

93. Although Ms. Wilson was regularly making monthly payments to her creditors, it was getting more difficult to bring down her total debt.

94. All Ms. Wilson's credit card debts, including the Capital One account, were incurred for personal, family, and household purposes.

18

95.    Around this same time, Ms. Wilson was contacted by multiple debt settlement and debt consolidation companies, including Level Debt regarding her financial situation.

96.    Ms. Wilson spoke by telephone with a Level Debt representative who told her Level Debt could negotiate debt reduction on her debts.

97.    Level Debt made a sales pitch to Ms. Wilson to persuade her to enter into a contract with Level Debt ("the Level Contract"), which Level Debt represented would reduce her credit card debt by entering her into its debt settlement program.

98.    Level Debt represented that if she followed the program and made regular deposits into a bank account which would be set up and dedicated for her debt settlement, Level Debt would settle her debts in the program for a greatly reduced amount.

99.    Level Debt also represented that they would provide Ms. Wilson with educational services and financial counseling, as necessary.

100.    Level Debt gathered Ms. Wilson's financial information, including income and outstanding debts.

101.    Level Debt represented that in order to receive their help, she could not be current on any of her credit accounts. The representative told Ms. Wilson that she would have to stop making payments on her accounts and let them go into default in order for Level Debt to help.

102.    Level Debt's representative stated that once her accounts were past due, Level Debt would be able to negotiate with her creditors on her behalf and make payments on her credit accounts for her. They further explained that once she was

represented by Level, Level Defendants would communicate with her creditors on her behalf.

103. Level Debt represented to Ms. Wilson that as part of the program, she would have access to legal representation in the event that a creditor files a lawsuit against her.

104. Ms. Wilson was concerned that her credit would be negatively affected if she stopped making payments and let her accounts go into default as Level Debt told her she must do. Level Debt confirmed that this was true but assured her that once Level Debt was able to help her with her debts, her credit would bounce back.

105. As part of the initial transaction, Ms. Wilson provided her bank account information and authorized monthly electronic transfers to Level Debt, via Forth, from her bank account.

106. Level Debt promised Ms. Wilson that in 48 months of using their services, she would be able to fully pay off debts enrolled in the program.

107. Before she entered into the contract, Level Debt represented that it would negotiate settlements with her creditors, including Capital One and Bank of America.

108. Level Debt represented to her that she would make monthly payments of approximately $331.87 per month to a required dedicated account with Forth.

109. Level Debt did not disclose any fees associated with the debt relief program to Ms. Wilson.

110. Level Debt told Ms. Wilson that they needed to have her signature to enroll in the program and told her that she had to sign the contract electronically.

20

111. Ms. Wilson did not give prior affirmative consent to conduct business electronically.

112. Ms. Wilson was not given alternative options to enroll in the program.

113. A representative of Level Debt solicited Ms. Wilson to enter into the Level Debt and electronically sent her a contract and other documents.

114. Prior to sending Ms. Wilson the electronic documents for review, Level Debt did not have Ms. Wilson demonstrate that she could utilize the electronic signature forum, Clixsign, a Forth product.

115. The Level Debt sales representative stayed on the phone with Ms. Wilson after sending her the Level Debt contract and summarized for her what the contract purportedly said, instructing Ms. Wilson where to electronically sign on several places in the contract.

116. The Level Debt sales representative did not review the entire contract with Ms. Wilson and merely paraphrased what the contract allegedly said and told her where to sign.

117. The Level Debt representative did not verbally disclose the fees associated with the services to Ms. Wilson when reviewing the Level Debt contract with her.

118. The Level Debt representative did not verbally disclose that the Level Debt contract contained an arbitration provision.

119. The Level Debt sales representative did not explain to Ms. Wilson that she would be required to waive certain statutory consumer protection rights in order to obtain the services of Level Debt.

120. On or about March 19, 2024, a Level Debt sales representative initiated a hard pull on Ms. Wilson's credit report via credit reporting services.

121. This was done without Ms. Wilson's knowledge or consent.

122. Upon information and belief, Defendant MBOCAL also does business as Nubreak.

123. On or about March 19, 2024, Ms. Wilson relied on the Level Debt's representations and entered into a contract for debt settlement services via her mobile phone.

124. Level Debt required her to deposit funds into its dedicated account with Forth (formerly known as DebtPayGateway) to participate in its debt settlement program.

125. Level Debt did not disclose to Ms. Wilson that she could choose to utilize her own Savings Plan.

126. Ms. Wilson relied upon Level Debt's representation and entered into a contract for designated account services with Forth.

127. Level Debt required Ms. Wilson to sign up for the Premier Legal Plan – Member Agreement, a lawsuit representation agreement with Premier Legal Inc.

128. Level Debt did not disclose to Ms. Wilson that this was an optional agreement, nor that she would be charged $299.00 at initial enrollment and an additional monthly membership fee of $59.00.

129. Level Debt required Ms. Wilson to execute a Power of Attorney, appointing Pinnacle Legal, PC as her attorney in fact.

130. The Power of Attorney ("POA") authorized Pinnacle Legal to fully represent Ms. Wilson in any litigation or negotiation of the modification, reduction, settlement and payment on any and all debts allegedly due and owning in her name.

131. Upon information and belief, the POA specifically included language that any litigation representation includes attendance at required court hearings.

132. Between March 1, 2024, and February 25, 2025, Ms. Wilson made all of her monthly payments to the designated account, which was to be used to pay her Capital One and Bank of America balances that the Level Defendants and the Renda Group were to negotiate for her.

133. Ms. Wilson paid a total of $4,368.57 on the Level Debt Contract.

134. Level Debt did not at any time negotiate a settlement with Capital One on Ms. Wilson's behalf, nor did it pay any money from Ms. Wilson's designated settlement account to Capital One.

135. Upon information and belief, the Level Debt Contract states that the client, Ms. Wilson, agrees to pay a fee of eighteen percent (18%) of each Enrolled Debt.

136. On or about December 19, 2024, Capital One sued Ms. Wilson on the now-defaulted Capital One account and Ms. Wilson was served via mail with the summons and complaint in Marquette County Small Claims Case No. 2024SC000264, Capital One, N.A. vs. Patricia A. Wilson.

137. Ms. Wilson was shocked to be served with a summons and complaint in that case, because she thought that her Capital One debt was being paid from the money being deducted from her bank account every month and put into the account

23

designated for this purpose which Level Debt had set up, which was controlled by Forth.

138. Until she was sued, Ms. Wilson had thought the Defendants were paying Capital One a negotiated reduced amount of her credit card debt, because she had been faithfully paying money earmarked to go to this account for approximately nine months.

139. The Summons and Complaint included a notice of Zoom Hearing, but Ms. Wilson did not know how to utilize Zoom.

140. Further, the Summons and Complaint had been received by Ms. Wilson after the return date had passed.

141. Once she received the Complaint, Ms. Wilson called Defendants to find out why she was being sued on a debt she was regularly paying in the Level Debt program.

142. On or about January 31, 2025, Ms. Wilson, with the assistance of a family member, contacted Defendant Pinnacle Legal via phone to 858-232-4000 after being sued by Capital One and spoke with an individual known to her as "Attorney Vince".

143. Upon information and belief, Ms. Wilson spoke with Defendant Vincent Renda for approximately 14 minutes.

144. During this call, Defendant Renda stated things like, "if your sister in law gets in debt, that's not my fault." And "if the company doesn't want to listen to me, that's their fault."

145.   Ms. Wilson felt that these statements were in reference to Capital One as she was advised that Capital One does not notify him prior to suing on a debt and that he has no power to make Capital One settle.

146.   The POA that Level Debt required Ms. Wilson to sign falsely represented to Ms. Wilson that the lawyers at Premier Legal and Pinnacle Legal were her lawyers, and that they would not only negotiate a settlement, but would protect and defend her from creditor lawsuits such as the one at bar.

147.   Pinnacle Legal was supposed to be Ms. Wilson's attorney to represent her interests relating to the Capital One account, according to the POA and the representations made by Level Debt.

148.   The representation that Pinnacle Legal would represent her if she was sued on the Capital One account was untrue, and neither the Level Defendants nor the Renda group represented Ms. Wilson in the lawsuit Capital One filed against her.

149.   The Renda group participated in and furthered the Level Defendant's violations of law for its own pecuniary gain, either knowing that the Level Defendants were engaging in a pattern and practice of deception and violations of law or consciously avoiding knowing about the Level Defendant's deceptive and illegal activities.

150.   Upon information and belief, the Renda Group financially profited from permitting the Level Defendants to use its name in Level Debt's contracts, including the contract with Ms. Wilson.

151. The Renda group provided substantial assistance and support to the Level Defendants either knowingly or by consciously disregarding that the Level Defendants and the Renda Group were engaged in illegal and deceptive activities regarding Ms. Wilson.

152. The defendants acted in concert to violate the laws complained of in this complaint and to deceive Ms. Wilson.

153. Defendants worked together to assist and further Level Debt's violations of the federal and state laws alleged in this complaint.

154. Defendants' acts and omissions caused Plaintiff to suffer damages, including attorney's fees and costs incurred in representing her in the Discover lawsuit, as well as other financial loss, emotional distress, worry, grief, fear, loss of opportunity, loss of enjoyment of life, and aggravation.

155. On or about March 5, 2025, Ms. Wilson received a voicemail message from an individual who identified themselves as "Darien," an Account Specialist, regarding a "scheduled appt."

156. Ms. Wilson did not have a scheduled appointment with anyone associated with the Level Defendants on that date.

157. On or about March 6, 2025, Ms. Wilson received a text message from an individual identifying themselves as "Susan Descoteaux," a Financial Coach with Defendant Level Coaching. This message stated that Ms. Wilson had a new account specialist named Michael Arayata who had a phone number of 279-255-1500.

158. On multiple occasions, Ms. Wilson attempted to access her Level Agreement, however was denied access.

159. On or about March 17, 2025, Attorney Angel Rose Kwaterski, of Legal Action of Wisconsin sent a letter to Level Debt via certified mail and email with a Notice of Representation, cancellation of contract and authorization removal, as well as requesting Ms. Wilson's file. (See Wilson 0015)

160. On or about March 27, 2025, Ms. Wilson was contacted by an individual identifying themselves as "Mia" with Level who wanted to set up a call regarding Ms. Wilson's "missed payment". "Mia" requested a callback at the phone number of 213-634-9826.

161. On or about April 2, 2025, Ms. Wilson received an email from Premier Legal Plan regarding monthly Legal Plan benefits in the amount of $29.00 being returned. And asked for a callback or email to the following number 888-304-7799 or email Care@pinlegal.com.

162. On or about April 2, 2025, Ms. Wilson also received a text from an individual identifying themselves as "Sara Sullivan" a Senior Account Specialist for Level Debt and provided Ms. Wilson with the following ways to contact her – via email to ssullivan@level-debt.com or via phone to 916-239-7220.

163. On or about April 11, 2025, Ms. Wilson received an email from the Level Defendants regarding "possible cancellation status for account". She was asked to contact the Level Defendants at 855-685-8050.

164. On or about April 12, 2025, Ms. Wilson received another voicemail from Ms. Sullivan regarding the cancellation of her account.

165. On or about May 13, 2025, Attorney Kwaterski sent the same letter previously sent to Level Debt to the emails previously provided to Ms. Wilson – ssullivan@level-debt.com; marayata@level-debt.com; care@plplegal.com and care@level-debt.com.

166. No response was received regarding this communication.

**First Claim for Relief – Wisconsin Consumer Act Violation Wis. Stat. §§ 422.502 and 422.504**
**Against the Level Defendants and Renda Group**

167. Ms. Wilson realleges and incorporates by reference the allegations of the preceding paragraphs.

168. At all relevant times, The Level Defendants and the Renda Group were merchants who, with respect to the extension of credit by others (Ms. Wilson's creditors), offered to Ms. Wilson to provide or perform services, or represented that they would provide or perform services, in return for the payment of money or for other valuable consideration which would ultimately improve Plaintiff's credit record, credit history, or credit rating.

169. At all relevant times, The Level Defendants and The Renda Group regularly advertised, offered, supplied, or dealt in services, money or credit in a manner which directly or indirectly resulted in or is intended or designed to result in, lead to or induce a consumer transaction and thus were "merchants" within the meaning of the Wisconsin Consumer Act, under Wis. Stat. § 421.301(25).

28

170. Ms. Wilson is a "Buyer" within the meaning of the meaning of the Wisconsin Consumer Act, under Wis. Stat. § 422.501 (1).

171. Defendants, by their occupations, held themselves out as having knowledge or skill peculiar to such practices or to whom such knowledge or skill may be attributed by his or her employment as an agent, broker or other intermediary.

172. The Level Defendants, and The Renda Group, were merchants who induced Ms. Wilson to enter into a consumer transaction for the modification of her consumer credit debts and as such, these defendants' dealings with Plaintiff were subject to the Wisconsin Consumer Act.

173. At all relevant times, The Level Defendants, and The Renda Group acting alone or in concert with others, have advertised, marketed, distributed, or sold debt relief services to consumers in Wisconsin.

174. At all relevant times, The Level Defendants were merchants who, with respect to the extension of credit by others, sold, provided or performed, or represented that the Level Defendants or The Renda Group would sell, provide or perform, in return for the payment of money, the services of: 1) improving a buyer's credit record, credit history or credit rating; or 2) arranging for or obtaining an extension of credit for a buyer; or providing advice or assistance to a buyer regarding these alleged services.

175. Level Debt is a "credit services organization" within the meaning of Wis. Stat. § 422.501(2).

176. The Level Defendants are "credit services organizations" within the meaning of Wis. Stat. § 422.501(2).

177. The Renda Group are "credit services organizations" within the meaning of Wis. Stat. § 422.501(2)(a).

178. Level Debt is not, and at all relevant times was not, licensed or registered in Wisconsin to perform services as a credit services organization under Wis. Stat. § 422.502.

179. The Level Defendants are not, and at all relevant times, were not licensed or registered in Wisconsin to perform services as a credit services organization under Wis. Stat. § 422.502.

180. The Renda Group is not, and at all relevant times was not licensed or registered in Wisconsin to perform services as a credit services organization under Wis. Stat. § 422.502.

181. Upon information and belief, Level Debt failed to obtain a surety bond issued by a surety company admitted to do business in Wisconsin or an irrevocable letter of credit from a federally insured bank or savings and loan association located in Wisconsin.

182. Upon information and belief, The Level Defendants failed to obtain a surety bond issued by a surety company admitted to do business in Wisconsin or an irrevocable letter of credit from a federally insured bank or savings and loan association located in Wisconsin.

183. Upon information and belief, The Renda Group failed to obtain a surety bond issued by a surety company admitted to do business in Wisconsin or an irrevocable letter of credit from a federally insured bank or savings and loan association located in Wisconsin.

184. Level Debt failed to file a copy of a bond or letter of credit with the administrator of the Department of Financial Institutions or any other regulator in Wisconsin.

185. The Renda Group failed to file a copy of a bond or letter of credit with the administrator of the Department of Financial Institutions or any other regulator in Wisconsin.

186. The Level Defendants failed to file a copy of a bond or letter of credit with the administrator of the Department of Financial Institutions or any other regulator in Wisconsin.

187. Defendants failed to provide Ms. Wilson with the information statement mandated by Wis. Stat. § 422.504.

188. The Level Defendants and The Renda Group knew or should have known that these were statutory prerequisites of the state of Wisconsin that must be satisfied prior to conducting business in the state.

189. The Level Defendants and The Renda Group knowingly and willfully violated the Wisconsin Consumer Act and the Wisconsin DFI licensing requirements.

190. The Level Defendants and The Renda Group have a pattern and practice of ignoring state and federal regulations.

191. Defendant Renda knew or should have known that these were statutory prerequisites of the state of Wisconsin that must be satisfied prior to conducting business in the state and he directed the Level Defendants and the Renda Group to continue doing business in Wisconsin anyway.

192. Defendant Osborne knew or should have known that these were statutory prerequisites of the state of Wisconsin that must be satisfied prior to conducting business in the state and he directed The Level Defendants to continue doing business in Wisconsin anyway.

193. Defendant Bartlett knew or should have known that these were statutory prerequisites of the state of Wisconsin that must be satisfied prior to conducting business in the state and he directed The Level Defendants to continue doing business in Wisconsin anyway.

194. All defendants are jointly and severally liable to Ms. Wilson for violations and penalty is subject to the remedies in Wis. Stat. §425.305.

**WHEREFORE**, Plaintiff prays this Court enter Judgment in her favor and against the Level Defendants and the Renda Group for the following:

a. Actual damages;

b. Punitive damages;

c. Statutory damages for each violation of the Wisconsin Consumer Act pertaining to that violation, including without limitation all appropriate damages and remedies of Wis. Stat. §§ 425.302, 425.303, 425.304, 425.305 and 425.310;

d. A declaration that the Level contract is void and unenforceable;

e. A declaration that the POA and contract with the Renda Group is void and unenforceable;

f. A declaration that the contract with Forth is void and unenforceable;

g. Reasonable attorney's fees and costs; and

h. Such other and further relief as this Court deems just and proper.

**Second Claim for Relief – Wisconsin Consumer Act Violations**
**Wis. Stat. 422.503**
**Against All Defendants**

195. Ms. Wilson realleges and incorporates all previous paragraphs.

196. Level Debt, at the direction of Defendants Bartlett, Osborne and Renda, made or used untrue or misleading representations in the offer or sale of the services of the credit services organization to Ms. Wilson in violation of Wis. Stat. § 422.503(1)(c).

197. The defendants engaged, directly or indirectly, in acts, practices, and a course of business that operates or would operate as a fraud or deception upon any person in connection with the offer or sale of the services of a credit services organization, in violation of Wis. Stat. § 422.503(1)(c).

198. The misrepresentations made to Ms. Wilson in violation of Wis. Stat. § 422.503(1)(c) include, but are not limited to:

a. The "Program Details," "program benefits," estimates, and representations Level Debt made, orally and in writing about how Ms. Wilson would benefit from the Level Debt program;

33

b. deceptively claiming that they can save Ms. Wilson substantial amounts of money through their debt relief services by lowering and/or eliminating debts;

c. misrepresenting that even if there is a temporary effect on Ms. Wilson's credit by participating in Level Debt's plan, Ms. Wilson's credit and creditworthiness will be restored prospectively and will improve because of participating in the program;

d. misrepresenting and providing inconsistent written and oral information about the amount of time Ms. Wilson would be in Level Debt's program and the services that allegedly will be performed during that time

e. representing that a lawyer from The Renda Group will assist Ms. Wilson with the program, including providing legal services to settle her debts and assisting her in dealing with her creditors;

f. using a contract and a power of attorney document containing deceptive, misleading, and legally invalid provisions and misrepresentations;

g. misleading Ms. Wilson by stating that all creditors would negotiate with Level Debt regarding Ms. Wilson's debt;

h. failing to provide statutorily compliant right to cancel the contract, in violation of Wisconsin law;

i. That Level Debt was entitled to offer debt relief services in the state of Wisconsin in or around the date they solicited business from Ms. Wilson; and

34

> j. That Level Debt maintains the requisite surety bond or insurance to cover
> consumer claims as required under state law.

199. The Level Defendants, at the direction of Osborne, Bartlett and Renda, intentionally, knowingly, and negligently misrepresented the Level Program to Ms. Wilson for its own financial gain, without regard to the truth that its program would never work in this case.

200. Level Debt, at the direction of Osborne, Bartlett and Renda, intentionally, knowingly, and negligently misrepresented the Level Debt Program to Ms. Wilson without regard to the harm and consequences that Ms. Wilson would suffer.

201. During Level Debt's sales pitch to Ms. Wilson, Level Debt never informed her that some creditors would refuse to negotiate her account with them as a matter of corporate policy.

202. Level Debt knew, but did not disclose to Ms. Wilson, that Capital One would not work with debt settlement companies and negotiate with Level Debt.

203. Level Debt knew, but did not disclose, that most if not all the consumers using its service would be sued for debts. As such, Level Debt never intended to communicate directly with Capital One or take affirmative steps to negotiate Ms. Wilson's Capital One debt.

204. Level Debt has long known that certain creditors, including Capital One, have policies against negotiating with debt-settlement companies such as Level Debt.

205. Ms. Wilson would never have entered into the Level Debt Contract had she known that Capital One refused to deal with debt settlement companies, including Level Debt.

206. Ms. Wilson would never have entered into the Level Debt Contract had she known that most consumers using its service would be sued for debts.

207. Had Level Debt informed Ms. Wilson that some creditors would not negotiate her account with Level Debt, she would have found an alternative way to pay down the Capital One account and would not have been sued by Capital One.

208. Since The Level Defendants and the Renda Group operate as a common enterprise, each of them is liable for these acts and practices.

209. As members of ACDR, the Level Defendants and Forth knew, or should have known, that the Wisconsin DFI required companies such as The Level Defendants and Forth to be licensed and regulated.

210. The POA was an express and implied misrepresentation that The Renda Group had a Wisconsin lawyer who could and would represent Ms. Wilson.

211. At the time Level Debt solicited Ms. Wilson to sign the Level Debt Contract and the Premier and Pinnacle Contracts, contrary to its advertisements and representations, The Renda Group had no lawyer in its firm with a current and valid license to practice law in Wisconsin.

212. The Renda Group engaged in the unauthorized practice of law in Wisconsin by making representations about its services to act in Wisconsin as her attorney.

213. Ms. Wilson would not have hired the defendants had it not been for the representations made to her by Level Debt relating to the services and results the Level Defendants could have for her, including having The Renda Group and Level Debt negotiating directly with Capital One and having a Wisconsin lawyer handle any litigation filed against her.

214. It was a misrepresentation that The Renda Group had attorneys who were admitted to practice law in Wisconsin and that they could provide Ms. Wilson (a Wisconsin consumer with no ties to California), legal representation, including defending against lawsuits filed in Wisconsin against her pertaining to her consumer credit cards.

215. The Renda Group lent its name and status as a law firm to instill in consumers, including Ms. Wilson, a false sense of legitimacy and legality of the Level Defendant's debt settlement program, when Level Debt's program was in fact replete with misrepresentations, deception, and violations of federal and state laws.

216. The Renda Group, by lending its name and status as a law firm which would negotiate with her creditors and provide legal services to Ms. Wilson in Wisconsin, deceptively misled Ms. Wilson into a false sense of security and reassurance.

217. Ms. Wilson reposed trust and confidence in the Level Defendants, Forth, and The Renda Group based on the advertisements, claims, and statements made to her and the POA.

218. The Level Defendants and The Renda Group's acts and omissions in dealing with Ms. Wilson were intentional and were not because of a mistake or misunderstanding.

219. The Level Defendants and The Renda Group, intentionally disregarded the rights of Ms. Wilson.

220. Level Defendants and The Renda Group knew or should have known that they were engaging in deceptive, abusive, and illegal activities in Wisconsin.

221. Upon information and belief, The Level Defendants and The Renda Group routinely, frequently, and persistently violate the federal and state laws complained of herein with other consumers.

222. The Level Defendants' entire business model, in which it regularly acts in concert with Forth and The Renda Group, at the direction of Osborne, Bartlett and Renda, is comprised of deceptive and illegal telemarketing, during which they routinely and repeatedly engage in the following unlawful and deceptive acts and practices, as they did with Ms. Wilson:

   a. deceptively claiming and misrepresenting that Level Debt was lawfully allowed to engage in debt relief, debt settlement services in the state of Wisconsin;

   b. misrepresenting Level Debt's ability to collect or receive fees or other forms of compensation from Wisconsin consumers;

   c. deceptively claiming that they can save consumers substantial amounts of money through their debt relief services by lowering and/or eliminating debts;

d. misrepresenting that even if there is a temporary effect on the consumers' credit by participating in Level Debt's plan, the consumers' credit and creditworthiness will be restored prospectively and will improve because of participating in the program;

e. misrepresenting and providing inconsistent written and oral information about the amount of time Ms. Wilson would be in Level Debt's program and the services that allegedly will be performed during that time;

f. representing that a lawyer and a law firm will assist them with the program, including providing legal services to settle their debts and assisting them in dealing with their creditors, deceptively lending an air of legitimacy to this scam;

g. using a contract and a power of attorney document containing deceptive, misleading, and legally invalid provisions and misrepresentations;

h. illegally charging advance payments before services are performed; and

i. failing to provide statutorily compliant right to cancel the contract, in violation of Wisconsin law.

223. Ms. Wilson suffered actual damages as a result of the untrue, deceptive and misleading representations and statements made by Level Debt, The Renda Group and Forth, to her including:

a. Severe damage to credit

b. Denial of credit

c. Loss of personal finances to pay for fraudulent debt settlement services

d. Loss of interest on deposits made to Ms. Wilson's account with Forth

39

e. Tensions on the familial relationship

f. Stress, frustration, anger, loss of sleep, anxiety, changes in mood, and sadness.

g. Loss of trust for financial services

h. Increased balances due to creditors; and

i. Attorney's fees.

224. Defendants are jointly and severally liable to Ms. Wilson for violations and penalty is subject to the remedies in Wis. Stat. § 425.305.

**WHEREFORE**, Plaintiff prays this Court enter Judgment in her favor and against the all defendants for the following:

a. Actual damages;

b. Punitive damages;

c. Statutory damages for each violation of the Wisconsin Consumer Act pertaining to that violation, including without limitation all appropriate damages and remedies of Wis. Stat. § 425.305 and 425.310;

d. A declaration that the Level contract is void and unenforceable;

e. A declaration that the POA and contract with the Renda Group is void and unenforceable;

f. A declaration that the contract with Forth is void and unenforceable;

g. Reasonable attorney's fees and costs; and

h. Such other and further relief as this Court deems just and proper.

## Third Claim for Relief – Wisconsin Consumer Act Violation
## Wis. Stat. 422– Contract Violations
## Against All Defendants

225. Ms. Wilson realleges and incorporates by reference the allegations of the preceding paragraphs.

226. Defendant Level Debt, The Renda Group and Forth failed to provide Ms. Wilson with a written informational statement including the information required in Wis. Stat. § 422.504.

227. Ms. Wilson did not consent to conduct business with Level Debt, Forth or The Renda Group electronically.

228. Defendant Level Debt failed to provide Plaintiff with a contract compliant with Wis. Stat. § 422.505 for its services.

229. Defendants Level Debt, The Renda Group and Forth illegally attempted to waive Plaintiff's rights under Wisconsin's Credit Services Organizations Act, including the right to a jury trial, which violated Wis. Stat. § 422.506.

230. Defendants Level Debt, The Renda Group and Forth's attempts to waive Plaintiff's rights under the Wisconsin Consumer Act, including Wis. Stat. § 422.506, are void and unenforceable.

231. As previously stated, since the Level Defendants and the Renda Group operate as a common enterprise, the Level Defendants and the Renda Group are liable to Ms. Wilson for the actions of Level Debt.

232. Osborne, Bartlett and Renda are liable to Ms. Wilson for knowingly and willfully directing The Level Defendants and Renda Group to engage in debt settlement

41

services in Wisconsin without complying with Wisconsin statutes regarding contract formation.

233. Wilson suffered damages as stated above due to Defendants' illegal actions.

**WHEREFORE**, Plaintiff prays this Court enter Judgment in her favor and against the all defendants for the following:

    a. Actual damages;

    b. Punitive damages;

    c. Statutory damages for each violation of the Wisconsin Consumer Act pertaining to that violation, including without limitation all appropriate damages and remedies of Wis. Stat. § 425.305 and 425.310;

    d. A declaration that the Level contract is void and unenforceable;

    e. A declaration that the POA and contract with the Renda Group is void and unenforceable;

    f. A declaration that the contract with Forth is void and unenforceable;

    g. Reasonable attorney's fees and costs; and

    h. Such other and further relief as this Court deems just and proper.

**Fourth Claim for Relief – Wisconsin Consumer Act Violation**
**Wis. Stat. § 421.108 – Breach of Obligation of Good Faith and Fair Dealing**
**Against All Defendants**

234. Ms. Wilson realleges and incorporates by reference the allegations of the preceding paragraphs.

235. Wis. Stat. § 421.108 imposes an obligation of good faith in the performance and enforcement of all duties outlined in the Wisconsin Consumer Act, including

42

contract formation, disclosure requirements and representations made to consumers.

236. Defendant Level Debt breached this obligation by knowingly and willingly taking unfair advantage of Ms. Wilson by:

   a. offering Ms. Wilson services they knew or should have known they were unlikely to be able to provide;

   b. entering into a contract for services with Ms. Wilson when they were not legally allowed to do so without obtaining the proper licensing and bond prerequisites;

   c. failing to disclose to Ms. Wilson that they were not licensed in the State of Wisconsin to provide such services

237. Level Debt did not observe reasonable commercial standards of fair dealing when they persistently failed to comply with state and federal regulations and when they misrepresented the terms of the contract to Ms. Wilson.

238. Debt breached the obligation of good faith and fair and is liable to Ms. Wilson for this conduct.

239. Since Level Debt, The Level Defendants and the Renda Group operate as a common enterprise, the Level Defendants and the Renda Group are also liable to Ms. Wilson for the conduct of Level Debt.

240. Osborne, Bartlett and Renda, at all times relevant, directed the activities of The Level Defendants and the Renda Group.

43

241. Osborne, Bartlett and Renda breached the obligation of good faith and fair dealing by directing The Level Defendants and the Renda Group to continue to enroll Wisconsin consumers, including Ms. Wilson, without having the legal right to do so.

242. Osborne, Bartlett and Renda failed to observe reasonable commercial standards of fair dealing as the President of Level Debt and The Level Defendants.

243. Osborne, Bartlett and Renda are liable to Ms. Wilson for violating Wis. Stat. §421.108.

244. The Renda Group breached the obligation of good faith and fair dealing owed to Ms. Wilson by doing the following:

   a. advertising they had attorneys licensed to practice law in Wisconsin,

   b. offering Ms. Wilson services they knew or should have known they were unlikely to be able to provide;

   c. entering into a contract for services with Ms. Wilson when they were not legally allowed to do so without obtaining the proper licensing;

   d. failing to disclose to Ms. Wilson that they were not licensed in the State of Wisconsin to provide such services

245. The Renda Group failed to observe reasonable commercial standards of fair dealing when they persistently failed to comply with state and federal regulations by practicing law in the State of Wisconsin without a license.

246. Forth breached the obligation of good faith and fair dealing owed to Ms. Wilson by doing the following:

a. offering Ms. Wilson services they knew or should have known they were unlikely to be able to provide;

b. entering into a contract for services with Ms. Wilson when they were not legally allowed to do so without obtaining the proper licensing;

c. failing to disclose to Ms. Wilson that they were not licensed in the State of Wisconsin to provide such services

247. Forth failed to observe reasonable commercial standards of fair dealing when they persistently failed to comply with state and federal regulations by practicing law in the State of Wisconsin without a license.

**WHEREFORE**, Plaintiff prays this Court enter Judgment in her favor and against all defendants for the following:

a. Actual damages;

b. Punitive damages;

c. Statutory damages for each violation of the Wisconsin Consumer Act pertaining to that violation, including without limitation all appropriate damages and remedies of Wis. Stat. §§ 425.302, 425.303, 425.304, 425.305 and 425.310.

d. A declaration that the Level contract is void and unenforceable;

e. A declaration that the POA and contract with the Renda Group is void and unenforceable;

f. A declaration that the contract with Forth is void and unenforceable;

g. Reasonable attorney's fees and costs; and

h. Such other and further relief as this Court deems just and proper.

**Fifth Claim for Relief – Conspiracy to violate Ms. Wilson's Rights**
**Against All Defendants**

248. Ms. Wilson realleges and incorporates all previous paragraphs.

249. Osborne, Bartlett and Renda had knowledge that Level Debt had intended to intentionally commit violations of state and federal regulations.

250. Osborne, Bartlett and Renda acted in concert, by knowingly directing the activities of Level Debt.

251. Defendant Level Debt and The Renda Group acted in concert to unlawfully influence Ms. Wilson to enter into a contract for their services for their own monetary gain.

252. Defendant Level Debt and Forth operated a common scheme against consumers, and Ms. Wilson, by Level Debt having consumers enter into a contract with Forth to hold the settlement funds associated with Level Debt's program.

253. Defendants collected a monthly service fee for holding her settlement funds.

254. Defendant Forth collected multiple $10.00 fees for "check payment" related to Ms. Wilson's accounts.

255. The Defendants collected fees from Ms. Wilson that they were legally not entitled to charge.

256. The contracts with the Defendants were illegal, being for services that the Defendants could not provide. An illegal contract is void ab initio.

257. Ms. Wilson paid $4,959.00 into her dedicated account, $1,510.00 was paid to Chase bank. Level Debt paid itself $651.00 for the Chase settlement; Forth collected $199.20 in account fees for transferring payments out of the dedicated account to her creditors.

258.  As a result of the actions of all defendants, Ms. Wilson suffered actual damages as outlined previously.

## Sixth Claim for Relief – Violations of Wis. Stat. § 100.18
### (Against The Level Defendants, The Renda Group)

259. Ms. Wilson realleges and incorporates by reference the allegations of the preceding paragraphs.

260. Defendants made untrue, deceptive, and misleading representations and statements in violation of Wis. Stat. § 100.18 to sell their services to Ms. Wilson.

261.  Upon information and belief, Defendants made other untrue, deceptive, and misleading representations and statements to Ms. Wilson which will be revealed in discovery.

262. The Defendants' actions were perpetrated against an Elderly person as defined in Wis. Stat. § 100.264.

263.  The defendants knew or should have known that Ms. Wilson was an elderly person, because she had provided her personally identifiable information, including date of birth.

264. Upon information and belief that Defendants routinely and as a matter of pattern and practice violate this statute without regard to any disability, age or other limitations contemplated by this section.

265. Ms. Wilson suffered pecuniary losses as a result of the untrue, deceptive and misleading representations and statements made by Level Debt and The Renda Group to her.

**WHEREFORE**, Plaintiff prays that this Court enter Judgment in her favor and against all Defendants for the following:

      a.    Actual damages for her pecuniary loss;

      b.    Punitive damages;

      c.    Reasonable attorney's fees and costs; and

      d.    Such other and further relief as this Court deems just and proper.

**Seventh Claim for Relief – Violations of the Credit Repair Organization Act (Against The Level Defendants, Osborne, Bartlett and Renda, and The Renda Group)**

266. Ms. Wilson realleges and incorporates by reference the allegations of the preceding paragraphs.

267. Congress passed the Credit Repair Organization Act ("CROA") at 15 U.S.C. §1679 et seq. to protect consumers from unscrupulous credit repair organizations.

268. Ms. Wilson is a "consumer" as defined by 15 U.S.C. § 1679a(1) of the CROA.

269. The CROA, pursuant to 15 U.S.C. § 1679b(a)(3) prohibits any person from "mak[ing] or us[ing] any untrue or misleading representation of the services of the credit repair organization." Additionally, pursuant to 15 U.S.C. § 1679b(a)(4), any

48

person is prohibited from "engag[ing], directly or indirectly, in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization."

270. The Level Defendants are a "credit repair organization" as defined by §1679a(3) of the CROA, as they are people using any instrumentality of interstate commerce or the mails to sell, provide, or perform any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of improving a consumer's credit, credit history, or credit rating, or providing assistance to any consumer with regard to any activity or service for the purpose of improving a consumer's credit.

271. The Renda Group defendants are a "credit repair organization" as defined by §1679a(3) of the CROA, as it is a person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of improving a consumer's credit, credit history, or credit rating, or providing assistance to any consumer with regard to any activity or service for the purpose of improving a consumer's credit.

272. Defendant Osborne, Bartlett and Renda are operating a "credit repair organization" as defined by §1679a(3) of the CROA, as they are people using any instrumentality of interstate commerce or the mails to sell, provide, or perform any service, in return for the payment of money or other valuable consideration, for the

49

express or implied purpose of improving a consumer's credit, credit history, or credit rating, or providing assistance to any consumer with regard to any activity or service for the purpose of improving a consumer's credit.

273. All defendants, including all individual defendants in this lawsuit, provided advice or assistance using an instrumentality of interstate commerce (telephone, email and/or mail) to sell, provide, or perform (or represent that such person could or would sell, provide, or perform) services to Plaintiff, in return for the payment of money or other valuable consideration, for the express or implied purpose of improving her credit record, credit history, or credit rating.

274. Defendants violated the above-referenced provisions of the CROA through its misrepresentations and deception as to the nature of the credit repair services provided Ms. Wilson in violation of 15 U.S.C. § 1679b(3).

275. All defendants in this case worked in concert and assisted other defendants in this case to make untrue or misleading representations of the services of the credit repair organizations to Plaintiff in violation of 15 U.S.C. § 1679b(3).

276. Defendants misrepresented the effectiveness of their services by promising substantial reductions in debt and improvement in credit scores within specific timeframes. Despite these assurances, Ms. Wilson experienced worsening credit and continued creditor harassment and a lawsuit which Discover filed against her when she stopped making payments on her Discover account, as Level Debt advised her to do. This misrepresentation constitutes a violation of the CROA as

Defendants deceived Ms. Wilson into enrolling and paying for services that were not delivered as promised.

277.  Ms. Wilson relied on Defendants' misrepresentations to her detriment, as she was charged monthly fees for services that were not rendered.

278.  Defendants' numerous misrepresentations to Plaintiff, individually and in concert, made to induce her to sign the Contracts, violated their joint and respective obligations under CROA.

279.  All defendants in this case engaged, directly or indirectly, in acts, practices, or through a course of business that constituted or resulted in the commission of, or attempted to commit, a fraud or deception on Plaintiff in connection with the offer or sale of the services of their credit repair organizations in violation of 15 U.S.C. § 1679b(4).

280.  The CROA, pursuant to 15 U.S.C. § 1679b(b), provides that "[n]o credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed."

281.  Defendants violated § 1679b(b) through its charging and receiving of money for services agreed to perform before such services are fully performed. Defendants charged and received money in exchange for services without fully performing those services, in violation of the CROA.

282. The CROA, 15 U.S.C. § 1679f provides that any contract not in compliance with the statute shall be treated as void and may not be enforced in any federal or state court or any other person.

**WHEREFORE**, Plaintiff prays that this Court grant her relief against all defendants jointly and severally for:

    a. Actual damages, including emotional, financial, and consequential damages;

    b. Punitive damages pursuant to 15 U.S.C. § 1679g;

    c. Costs and reasonable attorney's fees;

    d. Declaratory and injunctive relief declaring the contracts to be void; and

    e. Such other and further relief as this Court deems just and proper

**Ninth Claim for Relief – Wis. Stat. 100.20**
**Unfair, Deceptive Trade Practices by failing to comply with State and Federal regulations**
**Against All Defendants**

283. Ms. Wilson realleges and incorporates all previous paragraphs.

284. Congress has authorized the Federal Trade Commission ("FTC") to regulate the conduct of telemarketers who sell goods or services pursuant to a telemarketing plan under the 15 U.S.C. § 6102 et. seq., the Telemarketing and Consumer Fraud and Abuse Prevention Act and the Telemarketing Sales Rule (TSR).

285. In 2010, the FTC issued Telemarketing Sales Rules ("TSR") which imposes specific restrictions and requirements on debt relief services such as credit

counseling, debt settlement, debt negotiation, and debt elimination companies, including attorneys.

286. The FTC has promulgated the TSR at 16 C.F.R. § 310 et. Seq.

287. Pursuant to 16 C.F.R. §310.6(b)(5)(i), TSR applies to the debt relief services and the sellers who advertise those services when the consumer responds by telephone to that advertisement.

288. At all relevant times, Ms. Wilson was a "customer" as defined in 16 C.F.R. 310.2(n). She is also a "person" as defined at 16 C.F.R. 310.2(y).

289. At all relevant times, the business activities of Defendants Level Debt, The Level Defendants, Osborne, Bartlett and Renda and The Renda Group constituted a "debt relief service" as defined in 16 C.F.R 310.2(o) which is defined as "any program or service represented, directly or by implication, to renegotiate, settle, or in any way alter the terms of payment or other terms of the debt between a person and one or more unsecured creditors or debt collectors, including, but not limited to, a reduction in the balance, interest rate, or fees owed by a person to an unsecured creditor or debt collector."

290. At all times material hereto, Defendants Level Debt, The Level Defendants and The Renda Group were "seller(s)" with respect to debt relief services offered to Ms. Wilson as said term is defined under 16 C.F.R. §310.2(aa).

291. Defendants have violated the TSR with respect to its services to Ms. Wilson in the following ways:

    a. by requesting and receiving payment of any fee in consideration for debt relief service before achieving any result in contravention of 16 C.F.R. §310.4(a)(5)(i);

    b. by misrepresenting any debt relief service provided by Defendants in violation of 16 C.F.R. §310.3(a)(2)(x).

292. Defendants have maintained a practice and pattern of telemarketing which violates the TSR.

293. By failing to comply with the TSR, Defendants Level Debt, The Level Defendants, Osborne, Bartlett and Renda and The Renda Group have violated their common law and statutory obligations of good faith and fair dealing of Wis. Stat. § 421.108.

294. By failing to comply with the TSR, Defendants Level Debt, The Level Defendants, Osborne, Bartlett and Renda and The Renda Group have violated their common statutory obligations of engaging in unfair and deceptive trade practices under Wis. Stat. § 100.20.

295. By failing to comply with the CROA, Defendants Level Debt, The Level Defendants, Osborne, Bartlett and Renda and The Renda Group violated their common statutory obligations of engaging in unfair and deceptive trade practices under Wis. Stat. § 100.20.

296. By failing to comply with the licensing requirements of Wis. Stat. §218.02, the WCA, and other consumer protection statutes, all Defendants violated Wis. Stat. § 100.20 by engaging in unfair and deceptive trade practices.

54

297.   Ms. Wilson suffered actual damages as previously outlined.

298.   Defendants are jointly and severally liable to Ms. Wilson.

**WHEREFORE**, Plaintiff prays that this Court enters judgment in her favor and against Defendants, jointly and severally, for the following, plus reasonable attorney's fees and costs:

a.   Actual damages, including emotional and financial and consequential damages more than $50,000.00;

b.   Punitive damages;

c.   Attorney's fees and costs; and

d.   Such other and further relief as this Court deems just and proper.

## Eleventh Claim for Relief - Declaratory Judgment
### (Against Level Debt, Level Coaching, Pinnacle Legal, Premier Legal and Forth)

299.   Ms. Wilson realleges and incorporates by reference the allegations of the preceding paragraphs.

300.   The contracts with Defendants Level Debt, Level Coaching, Pinnacle Legal, Premier Legal and Forth are for an illegal purpose and are void and unenforceable.

301.   The contracts were never consummated because there were perquisites for a valid and enforceable contract that were never met.

302.   The contracts have been rescinded and are void ab initio.

303.   Ms. Wilson is entitled to a declaratory judgment that the contracts are void and unenforceable for any and all reasons set forth above.

**WHEREFORE**, Plaintiff prays that this Court enters judgment in her favor and against Defendants, jointly and severally, for the following, plus reasonable attorney's fees and costs:

a. Actual damages;

b. Punitive damages;

c. Statutory damages for each violation of the Wisconsin Consumer Act pertaining to that violation, including without limitation all appropriate damages and remedies of Wis. Stat. §§ 425.302, 425.303, 425.304, 425.305, 100.18, 100.20

d. Voiding the contract and declaring it unenforceable; and

e. Such other and further relief as this Court deems just and proper.

**Plaintiff demands that this case be heard by a jury.**

Dated: 14ᵗʰ day of January, 2026

Legal Action of Wisconsin, Inc.
*Electronically signed by Angel Kwaterski*
Angel Rose Kwaterski
SBN: 1104811
300 Ohio Street, Oshkosh, WI 54902
Telephone: 920.233.6521
Email: ark@legalaction.org

Heidi N. Miller
HNM Law, LLC
SBN: 1087696
PO Box 26273
Wauwatosa, WI 53226
414.306.7000
heidi@hnm-law.com