# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

PATRICIA A. WILSON,

               **Plaintiff,**

       **v.**                                   **Case No. 26-CV-68**

JKB FINANCIAL INC., *et al.*

               **Defendants.**

## DECISION AND ORDER

## 1. Procedural History

Plaintiff Patricia Wilson filed this action against ten defendants, asserting multiple state and federal claims related to an alleged deceptive debt settlement and credit repair service scam. The defendants have moved to compel arbitration and stay all proceedings. (ECF No. 13.) All parties have consented to the full jurisdiction of a magistrate judge. (ECF No. 3, 9.) The defendants' motion is fully briefed and ready for resolution.

## 2. Background

In or around March 2024 Wilson was contacted by multiple debt settlement and debt consolidation companies, including defendant JKB Financial Inc., d/b/a Level Debt. (ECF No. 1, ¶ 95.) Wilson spoke by telephone with a Level Debt representative, who told

her that Level Debt could negotiate debt reduction on her behalf. (*Id.*, ¶ 96.) Level Debt represented that, if Wilson followed the program and made regular deposits into a bank account which would be set up and dedicated for her debt settlement, then Level Debt would settle her debts in the program for a greatly reduced amount. (*Id.*, ¶ 98.)

On March 19, 2024, Wilson electronically executed a contract for debt settlement services with Level Debt (hereinafter, the "Level Debt Agreement"). (ECF No. 1, ¶¶ 96–123.) The Level Debt sales representative stayed on the phone with Wilson after sending her the contract and summarized for her what the contract purportedly said, instructing Wilson where to electronically sign on several places in the contract. (*Id.*, ¶ 115.) The Level Debt representative did not verbally disclose that the Level Debt contract contained an arbitration provision. (*Id.*, ¶ 118.)

Level Debt required Wilson to deposit funds into its dedicated account with defendant Set Forth Inc., a/k/a Forth Inc., f/k/a Debt Pay Gateway Inc., to participate in its debt settlement program. (ECF No. 1, ¶ 124.) Level Debt did not disclose to Wilson that she could choose to utilize her own savings plan. (*Id.*, ¶125.) Wilson executed a contract for designated account services with Set Forth in reliance upon Level Debt's representation (hereinafter, the "Set Forth Agreement"). (*Id.*, ¶ 126.)

Level Debt also required Wilson to sign up for the "Premier Legal Plan – Member Agreement," a lawsuit representation agreement with defendant Premier Legal Inc. (ECF No. 1, ¶ 127.) Wilson therefore executed a Power of Attorney, appointing defendant

2

Pinnacle Legal as her attorney in fact (hereinafter, the "Premier Legal Agreement"). (*Id.*, ¶ 129.) Wilson alleges that defendants Premier Legal, Inc. and Pinnacle Legal have operated as a common enterprise. (*Id.*, ¶ 44.)

Wilson's lawsuit arises in connection with these three contracts—the Level Debt, Set Forth, and Premier Legal Agreements. The defendants' motion seeks to compel arbitration under all three contracts.

### 3. Legal Standard

Section 2 of the Federal Arbitration Act, 9 U.S.C. §§ 1-16, states:

> A written provision in … a contract … to settle by arbitration a controversy thereafter arising out of such contract … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

"Congress has instructed federal courts to enforce arbitration agreements according to their terms." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 502 (2018). Although courts interpret arbitration agreements according to state law, the Federal Arbitration Act preempts state law "to the extent it 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives' of the [Federal Arbitration Act]." *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 183 (2019) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 352 (2011)).

"In determining whether a valid arbitration agreement exists between the parties, a federal court should look to the state law that ordinarily governs formation of contracts." *Dr. Robert L. Meinders, D.C., Ltd. v. UnitedHealthcare, Inc.*, 800 F.3d 853, 857 (7th

3

Cir. 2015) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)). Courts typically respect the law chosen in the parties' agreement when determining which state's law applies to questions of formation. *See Harris v. W6LS, Inc.*, 171 F.4th 957, 962 (7th Cir. 2026) (acknowledging an exception when the tribal law purportedly selected to govern the agreement did not exist at the time of contract formation); *see also Molloy v. RK Netmedia, Inc.*, No. CV0902614MMMAGRX, 2009 WL 10669608, at *10 (C.D. Cal. Oct. 8, 2009) (applying Florida law in California court to assess conscionability of arbitration provision in contract with Florida choice-of-law provision).

"[T]he party seeking to compel arbitration bears the burden to establish: '(1) an agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal by the opposing party to proceed to arbitration.'" *Rose v. Mercedes-Benz USA, LLC*, 167 F.4th 975, 978 (7th Cir. 2026) (*citing Zurich American Ins. Co. v. Watts Indus., Inc.*, 466 F.3d 577, 580 (7th Cir. 2006)). "[A] party cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests; the party must identify *specific evidence* in the record demonstrating a material factual dispute for trial." *Id.* (quoting *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002)).

## 4. Analysis

The defendants argue that they have satisfied all three prerequisites to compel arbitration because (1) Wilson signed and performed under all three contracts, (2) they each contain similar arbitration clauses covering any controversy, claim, or dispute

4

arising out of or relating to the contracts, and (3) Wilson's lawsuit is a clear demonstration of her refusal to arbitrate. (ECF No. 13 at 5–6.) Wilson recognizes the same three prerequisites apply to a motion to compel arbitration but otherwise makes no mention of the second or third requirements—that is, she does not argue that her claims are outside the scope of the arbitration agreements or dispute that she has refused to arbitrate. (*See* ECF No. 14 at 5.)

Wilson only argues that the defendants "have failed to establish the existence of a valid, enforceable contract evidencing [her] agreement to arbitrate under Wisconsin contract law." (ECF No. 14 at 1.) She admits electronically signing all three contracts and that they each contain arbitration provisions but contends they are invalid or unenforceable because "there was no mutual assent to the alleged arbitration clause[s]," the contracts violate certain state and federal statutes, and the arbitration provisions are unconscionable. (*Id.*)

### 4.1. Mutual Assent

Wilson argues that the arbitration clauses in all three contracts are unenforceable because they are "one-sided, vague and indeterminate" such that there could not be a meeting of the minds at the time of contract formation. (ECF No. 14 at 12–13.) She claims that all three contracts were packaged together but contain different arbitration clauses with different terms, so "[i]t is not reasonably certain what promises and performance are to be rendered by each party." (*Id.* at 13–14.) But Wilson offers no authority requiring

different, albeit related, contracts to elect a consistent arbitration forum and/or governing law. (*See id.*)

There is no lack of clarity about the agreements to arbitrate when considering each discrete contract. The contracts each specify a governing law, as well as which rules to apply in arbitration. (*See* ECF No. 13-2 at 7 (identifying California as the governing law of the Level Debt Agreement and electing to apply the rules of the American Arbitration Association ("AAA") in arbitration); (ECF No. 13-4 at 2 (identifying the state of the member's residence as the governing law of the Premier Legal Agreement and electing to apply the rules of the AAA in arbitration); (ECF No. 13-6 at 11–12 (identifying California as the governing law of the Set Forth Agreement and electing to apply the rules of JAMS ADR Services, Inc. ("JAMS") in arbitration).) Wilson has not made a compelling argument for treating all three contracts as one. *See, e.g.*, *Carr v. Heart of N. Home Inspection, Inc.*, 970 N.W.2d 580 (Wis. Ct. App. 2022) (finding the need for separate forums did not make the agreement substantively unconscionable because the plaintiffs had not shown it would "deprive them of any meaningful resolution of their claims").

Therefore, the court rejects Wilson's argument that the parties did not mutually assent to the arbitration clauses based on a "lack of definiteness." (*See* ECF No. 14 at 12.)

### 4.2. Voidability under State and Federal Law

Wilson argues that all three contracts are void under the Wisconsin Electronic Transaction Act, Wisconsin Consumer Act, and the federal Credit Repair Organizations

6

Act. (ECF No. 14 at 14–17.) These arguments challenge the contracts overall, not the specific arbitration clauses. (*See generally id*.) A challenge to the validity of a contract as a whole, and not specifically to the arbitration clause, must be determined by the arbitrator. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445–46 (2006) (holding that "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance"). Therefore, the court declines to reach the merits of these arguments.

### 4.3. Unconscionability

Wilson further contends the arbitration clauses are unconscionable and therefore unenforceable. (ECF No. 15 at 6 (citing *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010) ("Like other contracts, … [arbitration agreements] may be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability.").) The court will address each of the three contracts in turn.

#### 4.3.1. Level Debt Agreement

Wilson argues that the arbitration provision in the Level Debt Agreement, which is governed by California law, is substantively unconscionable based on the arbitrator selection procedure, the fee allocation, and the restriction on vacation or modification. (ECF No. 14 at 8.) She contends that the agreement to arbitrate was also procedurally unconscionable and therefore unenforceable. (*See id.* at 10–12.)

"Under California law, a contract must be *both* procedurally and substantively unconscionable to be rendered invalid." *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 922 (9th Cir. 2013) (emphasis added). However, California courts apply a "sliding scale" whereby "the greater a showing of substantive unconscionability, the less procedural unconscionability is needed to render an agreement unenforceable, and vice versa." *Tyler v. Tailored Shared Servs., LLC*, No. 24-7669, 2025 WL 2938692, at *1 (9th Cir. Oct. 16, 2025) (quoting *Malone v. Superior Court*, 226 Cal. App. 4th 1551, 1561 (Cal. Ct. App. 2014)).

"The procedural element addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power, while the element of substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided." *Streedharan v. Stanley Indus. & Auto., LLC*, No. 22-55999, 2023 WL 9067587, at *2 (9th Cir. Jan. 4, 2023) (internal quotations omitted) (quoting *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 282 P.3d 1217, 1232 (Cal. 2012).

### 4.3.1(a) Arbitrator Selection Procedure

Wilson contends that the Level Debt Agreement violates the rules and procedures of its arbitration forum, the AAA, by requiring that arbitration "be conducted by a mutually agreed upon Arbitrator" when the AAA assigns arbitrators. (ECF No. 14 at 8.) However, the AAA's website states, "If the parties' contract does not specify how the arbitrator(s) are to be selected, the selection process is governed by the AAA's industry-

8

specific arbitration rules. … The parties are always encouraged to agree on the arbitrator(s) mutually." *See* "Frequently Asked Questions," Am. Arbitration Assoc., https://www.adr.org/arbitration/. Accordingly, there does not appear to be a dispute between the provision and the AAA rules.

Moreover, Wilson has not demonstrated how this provision would unreasonably favor one side or another and, therefore, why it is substantively unconscionable. *See Spikener v. Noble Food Grp. Inc.*, No. 18-CV-02855-LB, 2018 WL 11471627, at *3 (N.D. Cal. Aug. 28, 2018) ("To be substantively unconscionable, the agreement must be 'overly harsh,' 'unduly oppressive,' 'unreasonably favorable,' or must 'shock the conscience,' i.e., the agreement's terms must be 'unreasonably favorable to the more powerful party.'") (internal quotations omitted) (citing *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1261 (9th Cir. 2017)).

For these reasons, the arbitrator selection procedure does not create any substantive unconscionability.

### 4.3.1(b) Fee Allocation

Wilson asserts that the fee allocation in the Level Debt Agreement, which requires the parties to share the cost of arbitration equally, violates the AAA's rule that, "[i]n consumer arbitration proceedings, the consumer's administrative fee is capped at $225. The business pays the arbitrator's compensation unless the consumer—post dispute— voluntarily elects to pay a portion of the arbitrator's compensation." (ECF No. 14 at 8

(citing "Consumer Arbitration Fact Sheet," Am. Arbitration Assoc., https://go.adr.org/consumer-arbitration (last visited June 5, 2026).)

The arbitration clause in the Level Debt Agreement states that arbitration shall be governed by the rules of the AAA. (ECF No. 13-2 at 7.) The parties have not addressed how the AAA should handle a conflict of this nature. Wilson does not point to any legal authority suggesting that contracting parties cannot agree to different fee terms than those set by the AAA. (*See* ECF No. 14 at 8.) Nor does the arbitration clause limit the application of the AAA's rules. (*See* ECF No. 13-2 at 7.) And "the AAA has the power to interpret its own rules." *Greco v. Uber Techs., Inc.*, No. 4:20-CV-02698-YGR, 2021 WL 134578, at *3 (N.D. Cal. Jan. 14, 2021); *see also* "Consumer Arbitration Rules and Mediation Procedures," Am. Arbitration Assoc., https://www.adr.org/rules-forms-and-fees/consumer/ ("The arbitrator shall interpret and apply these Rules as they relate to the arbitrator's powers and duties.").

California also has a "long-standing public policy of ensuring that all litigants have access to the justice system for resolution of their grievances, without regard to their financial means." *Roldan v. Callahan & Blaine*, 161 Cal. Rptr. 3d 493, 498 (Cal. Ct. App. 2013). Therefore,

> when a party who has engaged in arbitration in good faith is unable to afford to continue in such a forum, that party may seek relief from the superior court. If sufficient evidence is presented on these issues, and the court concludes the party's financial status is not a result of the party's intentional attempt to avoid arbitration, the court may issue an order specifying: (1) the arbitration shall continue so long as the other party to the

10

arbitration agrees to pay, or the arbitrator orders it to pay, all fees and costs of the arbitration; and (2) if neither of those occur, the arbitration shall be deemed "had" and the case may proceed in the superior court.

*Weiler v. Marcus & Millichap Real Est. Inv. Servs., Inc.*, 232 Cal. Rptr. 3d 155, 164 (Cal. Ct. App. 2018); *see also Aronow v. Superior Ct.*, 291 Cal. Rptr. 3d 784, 799 (Cal. Ct. App. 2022) (holding that, if a party demonstrates financial inability to pay anticipated arbitration costs before commencement, the trial court has discretion to require the opposing party to pay indigent party's share of the arbitrator's fee or to waive the right to arbitrate).

Wilson has not demonstrated how a provision to share arbitration costs, on its face, unreasonably favors one side over another. Wilson may pursue remedies under California law, as appropriate, if she believes she is unable to pay the costs of arbitration. Therefore, the court does not find the fee allocation is substantively unconscionable.

### 4.3.1(c) Restriction on Vacation or Modification

The arbitration and choice of law provision in the Level Debt Agreement states that "[t]he award rendered by the Arbitrator shall be final, binding on all parties, and not challengeable or subject to vacation or modification." (ECF No. 13-2 at 7.) The defendants contend that this clause "recognizes the long-standing policy in California that arbitration is final and conclusive." (ECF No. 16 at 4.)

The final phrase "not challengeable or subject to vacation or modification" plainly evinces an intent to ban further review altogether. But a ban on further review is not unconscionable, as Wilson argues, because it does not unreasonably favor one side or

11

another. *See Dominguez v. Sonesta Int'l Hotels Corp.*, 648 F. Supp. 3d 1162, 1169 (N.D. Cal. 2023) ("A contract is unconscionable if one of the parties lacked a meaningful choice in deciding whether to agree [procedural unconscionability] and the contract contains terms that are unreasonably favorable to the other party [substantive unconscionability].").

Having said that, parties cannot contractually eliminate all judicial review of arbitration awards. *See In re Wal-Mart Wage & Hour Emp. Pracs. Litig.*, 737 F.3d 1262, 1268 (9th Cir. 2013) ("Permitting parties to contractually eliminate all judicial review of arbitration awards would not only run counter to the text of the [Federal Arbitration Act], but would also frustrate Congress's attempt to ensure a minimum level of due process for parties to an arbitration."). Sections 10 and 11 of the Federal Arbitration Act set forth grounds upon which a court may vacate or modify an award—including, for example, where the award was procured by corruption, fraud, or undue means, or where there was evident partiality on the part of the arbitrator. 9 U.S.C. §§ 10–11; *see also, e.g., Costco Wholesale Corp. v. Int'l Bhd. of Teamsters, Loc.*, No. 542, 850 F. App'x 467, 469 (9th Cir. 2021) (finding vacation of arbitral award appropriate where "ex parte communications and an unauthorized settlement offer reflect[ed] consummate bias and lack of commitment to a transparent proceeding").

Courts have upheld arbitration provisions that *limit* further review consistent with the parties' legal rights. For instance, an arbitration agreement stating that the arbitrator's award "'is subject only to limited review and may not be altered or overturned even if it

12

is incorrect legally or factually,' may reasonably be construed as lawfully restricting judicial review of an arbitration award, including for legal or factual errors, but only to the extent permitted by statutory and case law." *Valdez v. Santa Lucia Pres. Co.*, No. H040685, 2015 WL 1311662, at \*7, \*10 (Cal. Ct. App. Mar. 23, 2015) (acknowledging that a court has the statutory authority to vacate or correct an arbitration award "under limited circumstances" and "arbitrator decisions cannot be judicially reviewed for errors of fact or law even if the error is apparent and causes substantial injustice").But the Level Debt Agreement does not indicate that judicial review is "limited" in scope. (*See* ECF No. 13-2 at 7.) Therefore, the Level Debt Agreement's ban on vacation or modification of an arbitration award illegally contravenes the right to judicial review.

### 4.3.1(d) Severability

Because Wilson has failed to establish a showing of *any* substantive unconscionability with respect to the arbitration provision in the Seth Forth Agreement, the court will not reach her arguments related to procedural unconscionability thereunder. The court will, however, consider severance of the illegal ban on judicial review.

Under California law, "courts may enforce contracts that illegally contravene public rights, so long as the objectionable provisions can be severed." *Abramson v. Juniper Networks, Inc.*, 9 Cal. Rptr. 3d 422, 437 (Cal. App. 2004). California courts rely on statutory authority to accomplish severance in this situation, rather than contracted severability

13

provisions. *See id.* at 438 ("Where a contract has several distinct objects, of which one at least is lawful, and one at least is unlawful, in whole or in part, the contract is void as to the latter and valid as to the rest.") (quoting Cal. Civ. Code § 1599); *see also Ronderos v. USF Reddaway, Inc.*, 114 F.4th 1080, 1103 (9th Cir. 2024) ("[U]nder California law, the mere presence of a severability clause is not dispositive.").

Two "policy reasons" support severing objectionable terms instead of invalidating the entire agreement: (1) "to conserve a contractual relationship if to do so would not be condoning an illegal scheme," and (2) "to prevent parties from gaining undeserved benefit or suffering undeserved detriment as a result of voiding the entire agreement— particularly when there has been full or partial performance of the contract." *Ronderos v. USF Reddaway, Inc.*, No. EDCV 21-639-MWF-KKX, 2021 WL 2670740, at *7 (C.D. Cal. June 2, 2021), *aff'd*, 114 F.4th 1080 (9th Cir. 2024). "The overarching inquiry is whether the interests of justice would be furthered by severance." *Id.* (citation omitted).

Three factors are relevant to whether severance is appropriate: (1) whether "the central purpose of the contract is tainted with illegality," (2) whether the agreement "contains more than one unlawful provision," which may indicate a systematic effort to impose arbitration "as an inferior forum" that "may justify a conclusion that the arbitration agreement is permeated by an unlawful purpose," and (3) whether "there is no single provision a court can strike or restrict in order to remove the unconscionable taint from the agreement" such that the court would have to "reform the contract, not

14

through severance or restriction, but by augmenting it with additional terms, which would exceed its power to cure a contract's illegality." *Ronderos*, 2021 WL 2670740, at *7 (quoting *Armendariz v. Found. Health Psychcare Servs., Inc.*, 99 Cal. Rptr. 2d 745 (Cal. 2000)).

The ban on judicial review is the only unlawful provision this court has identified in the Level Debt Agreement. Severing it to permit judicial review, as permitted by law, will not materially affect the parties' agreement to arbitrate. *Cf. Fitz v. NCR Corp.*, 13 Cal. Rptr. 3d 88, 106 (Cal. App. 2004) (affirming refusal to sever objectionable provisions and denial of motion to compel arbitration because severing the discovery limitations would effectively rewrite the agreement). Enforcing the contractual agreement to arbitrate will also not condone an illegal scheme. Because the unlawful provision is not central to the parties' agreement to arbitrate, the court will sever from the Level Debt Agreement the phrase "and not challengeable or subject to vacation or modification" in Section 16 on Arbitration and Choice of Law. (*See* ECF No. 13-2 at 7.)

With the ban on judicial review severed, Wilson has not generated a genuine dispute of material fact challenging the enforceability of the arbitration clause. Therefore, the court will grant the defendants' motion to compel arbitration under the Level Debt Agreement.

### 4.3.2. Premier Legal Agreement

Wilson argues that the arbitration provision in the Premier Legal Agreement is substantively unconscionable based on two of the same elements as addressed in the

Level Debt Agreement: (1) the fee-sharing allocation and (2) a restriction on vacation or modification. (ECF No. 14 at 8–9.) The Premier Legal Agreement, however, is governed by the law of the state in which the member resides, which the parties agree is Wisconsin. (*See id.* at 2; ECF No. 14 at 8.) Wilson contends that the agreement to arbitrate was also procedurally unconscionable and therefore unenforceable. (*See id.* at 10–12.)

Under Wisconsin law, an agreement is unconscionable if it is "*both* procedurally and substantively unconscionable." *Buddy's Plant Plus Corp. v. Viking Masek Glob. Packaging Techs., LLC*, 25 N.W.3d 613, 626 (Wis. Ct. App. 2025) (emphasis added). "The procedural aspect of unconscionability examines factors surrounding the contracting process to determine whether one party faced 'an absence of meaningful choice.'" *Id.* (citations omitted). "Substantive unconscionability, in contrast, examines 'the reasonableness of the contract terms themselves, that is, whether they are commercially reasonable or unreasonably favor the more powerful party.'" *Id.* (citation omitted). Like in California, "[t]he more substantive unconscionability present, the less procedural unconscionability is required, and vice versa." *Cottonwood Fin., Ltd. v. Estes*, 810 N.W.2d 852, 856 (Wis. Ct. App. 2012).

### 4.3.2(a) Fee Allocation

Wilson asserts that the fee allocation in the Premier Legal Agreement, which requires the parties to share the cost of arbitration equally, violates the AAA's rule that caps the cost of a consumer's administrative fee at $225. (ECF No. 14 at 8–9.) However,

16

the equal fee-sharing provision does not establish substantive unconscionability because, as the court explained with respect to the Level Debt Agreement: (1) an equal fee-sharing requirement does not facially favor one side over another, and (2) arbitrators have the authority to interpret and apply the rules of their forums. *See also Roustan v. Robinhood Fin. LLC*, No. 2021AP984, 2022 WL 401607, at \*3 (Wis. Ct. App. Feb. 10, 2022) ("Substantive unconscionability focuses on the one-sidedness, unfairness, unreasonableness, harshness, overreaching, or oppressiveness of the provision at issue.") (quoting *Wisconsin Auto Title Loans, Inc. v. Jones*, 714 N.W.2d 155 (Wis. 2006)).

Moreover, "[a] party seeking to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive bears the burden of showing the likelihood of incurring such costs." *James v. McDonald's Corp.*, 417 F.3d 672, 679 (7th Cir. 2005); *see also Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 90–92 (2000) (observing "that the existence of large arbitration costs could preclude a litigant … from effectively vindicating her federal statutory rights in the arbitral forum"). Wilson has not submitted affidavits, exhibits, or other evidence establishing her financial situation or the comparative expense between arbitration and litigation. *See James*, 417 F.3d at 679 (affirming denial of request to invalidate arbitration agreement based on high costs because movant "submitted no evidence indicating how her financial situation would be factored into an assessment of the arbitration costs under [the AAA's] hardship provision" nor "concerning the comparative expense of litigating her claims").

17

For these reasons, the equal fee sharing provision in the Premier Legal Agreement is not substantively unconscionable.

### 4.3.2(b) Restriction on Vacation or Modification

Like the Set Forth Agreement, the arbitration provision in the Premier Legal Agreement states, "The award rendered by the arbitrator shall be final and shall not be subject to vacation or modification." (ECF No. 13-4 at 3.) Neither the Wisconsin state courts nor the Seventh Circuit Court of Appeals have addressed whether parties can contractually eliminate judicial review of arbitration awards. But several persuasive decisions by other federal courts of appeals lead this court to conclude that no such waiver is permissible.

In addition to the aforementioned Ninth Circuit decision in *In re Wal-Mart*, 737 F.3d at 1268, the Second Circuit Court of Appeals has found that parties cannot contractually preclude judicial review of arbitration awards in contravention of the courts' "statutory and common-law authority to review both the substance of the awards and the arbitral process for compliance with § 10(a)" of the Federal Arbitration Act. *Hoeft v. MVL Grp., Inc.*, 343 F.3d 57, 66 (2d Cir. 2003), overruled on other grounds by *Hall St. Assocs. L.L.C. v. Mattel, Inc.*, 552 U.S. 576 (2008)). The Tenth Circuit Court of Appeals also found that parties can contractually waive the right to *appellate* court review, noting they would "not have a situation in which there is no judicial review at all, nor a situation where a court is asked to enforce an arbitration award without being given the authority

18

to review compliance of that award with the [Federal Arbitration Act]." *MACTEC, Inc. v. Gorelick*, 427 F.3d 821, 830 (10th Cir. 2005). The essence of these decisions is clear: parties cannot contractually waive the statutorily afforded right to judicial review altogether. *See Hall St. Assocs.*, 552 U.S. 576 (holding that §§ 10 and 11 provide the exclusive, non-expandable, regimes for review under the Federal Arbitration Act).

"Wisconsin courts have historically refused to enforce contracts that violate a statute, a rule of law or public policy or abuse the judicial process." *Gubrud v. Storesonline, Inc.*, No. 11-CV-376-SLC, 2012 WL 12995322, at *6 (W.D. Wis. Feb. 21, 2012) (quoting *Jezeski v. Jezeski*, 763 N.W. 2d 176 (Wis. Ct. App. 2009)). The arbitration clause in the Premier Legal Agreement plainly evinces an intent to forego judicial review altogether, even though §§ 10 and 11 of the Federal Arbitration Act set forth grounds upon which a court may vacate or modify an award—including, for example, where the award was procured by corruption, fraud, or undue means, or where there was evident partiality on the part of the arbitrator. The parties cannot contractually strip the courts of this authority.

### 4.3.2(b) Severability

Because Wilson has failed to establish a showing of *any* substantive unconscionability with respect to the arbitration provision in the Premier Legal Agreement, the court will again not reach her arguments related to procedural

unconscionability. The court will, however, consider severance of the illegal ban on judicial review.

"Even if a contract contains an illegal provision, 'Wisconsin has long accepted that a portion of a contract may be severable.'" *In re F.T.R.*, 833 N.W.2d 634, 649 (Wis. 2013) (citation omitted). "Courts have found that severance is proper under these circumstances, wholly apart from whether the agreement contains a severability clause." *Rossman v. A.R.M. Corp.*, No. 16-C-493-WCG, 2016 WL 6989789, at *2 (E.D. Wis. Nov. 29, 2016) (collecting cases from other jurisdictions). "The 'rule of severability' provides that a contract may survive if an illegal clause can be severed from the remainder of the contract without defeating the primary purpose of the bargain." *Wells Fargo Bank, N.A. v. Lake of The Torches Econ. Dev. Corp.*, 677 F. Supp. 2d 1056, 1061 n.3 (W.D. Wis. 2010) (citing *Dawson v. Goldammer*, 722 N.W.2d 106, 110 (Wis. Ct. App. 2006)).

"[B]efore a court can sever a contractual provision from a contract, it must first determine whether the severed provision 'is integral to the entire contract.'" *Riley v. Extendicare Health Facilities, Inc.*, 826 N.W.2d 398, 411 (Wis. Ct. App. 2012). If an unconscionable or otherwise objectionable provision "is as important a consideration as the agreement to arbitrate itself, a court will not sever the failed term from the rest of the agreement and the entire arbitration provision will fail." *Id.*; *see also Herrington v. Waterstone Mortg. Corp.,* No. 11-CV-779-BBC, 2012 WL 1242318, at *7 (W.D. Wis. Mar. 16, 2012) ("Generally, courts focus on two factors in making this determination: whether the

20

unlawful provision is essential to the agreement as a whole and whether multiple unlawful provisions support the conclusion that the drafter of the agreement was attempting to undermine the other party's rights.").

Severing the ban on vacation or modification to permit judicial review, as permitted by law, will not materially affect the parties' agreement to arbitrate. Severance will also not undermine the objective of the statute violated. *See Baierl v. McTaggart*, 629 N.W.2d 277, 286 (Wis. 2001) (finding that illegal clause could not be severed because enforcement "would defeat the objectives of the regulation"). Because the illegal provision is not essential to the parties' agreement to arbitrate, the court will sever from the Arbitration of Dispute section of the Premier Legal Agreement the phrase "and shall not be subject to vacation or modification." (*See* ECF No. 13-4 at 3.)

With the ban on judicial review severed, Wilson has not generated a genuine dispute of material fact challenging the enforceability of the arbitration clause. Therefore, the court will grant the defendants' motion to compel arbitration under the Premier Legal Agreement.

### 4.3.3. Set Forth Agreement

Unlike the first two contracts, the arbitration clause in the Set Forth Agreement does not contain a restriction on judicial review of the arbitrator's decision. (*See* ECF No. 13-6 at 11–12 ("The arbitration shall be final, conclusive and binding on the Parties

and the award of the arbitrator(s) shall be enforceable in any court of competent jurisdiction.").)

Nevertheless, Wilson argues that this arbitration clause is substantively unconscionable for three additional reasons: improper waiver of statutory rights, violation of arbitration rules, and an unreasonable location requirement. (*See* ECF No. 14 at 9–10.) She contends that the agreement to arbitrate was also procedurally unconscionable and therefore unenforceable. (*See id.* at 10–12.)

### 4.3.3(a) Substantive Unconscionability

Wilson argues that the arbitration clause violates the "prospective waiver" doctrine by removing her ability to pursue certain costs and attorney's fees if she would prevail. (ECF No. 14 at 10–11.) With respect to fees, the arbitration clause states:

> Each side … agrees that all administrative and arbitration fees and costs, including the arbitrator's fees, shall be split equally between them. The attorney's fees and costs incurred shall be borne by the Parties, and the arbitrator shall not have the discretion to award the arbitration fees, attorney's fees, or any other costs to the prevailing Party in any such arbitration.

(ECF No. 13-6 at 12.)

Wilson contends that the claims she is pursuing involve shifting fees if she prevails. (ECF No. 14 at 10 (citing Wis. Stat. § 425.308(1) ("If the customer prevails in an action arising from a consumer transaction, the customer shall recover the aggregate amount of costs and expenses determined by the court to have been reasonably incurred on the customer's behalf in connection with the prosecution or defense of such action,

22

together with a reasonable amount for attorney fees."); Wis. Stat. § 100.18(11)(b)(2) ("Any person suffering pecuniary loss because of a violation of this section by any other person may sue in any court of competent jurisdiction and shall recover such pecuniary loss, together with costs, including reasonable attorney fees…"); 15 U.S.C. § 1679g(a)(3) (person who fails to comply "shall be liable" for reasonable attorneys' fee); and Wis. Stat. § 100.20(5) (reasonable attorney fee "shall" be recovered).)

The defendants contend that that the fee provision "does not prevent a court from awarding statutory fees following the confirmation of an arbitrator's decision." (ECF No. 16 at 7.) However, they cite no authority in support of that contention.

The defendants also state that the arbitration clause in the Set Forth Agreement opts to arbitrate before JAMS ADR Services, Inc. ("JAMS"), and the JAMS rules state, "Remedies that would otherwise be available to the consumer under applicable federal, state or local laws must remain available under the arbitration clause, unless the consumer retains the right to pursue the unavailable remedies in court." (*Id.* at 6 (citing "Consumer Minimum Standards," JAMS, https://www.jamsadr.com/consumer-minimum-standards).)

However, the invocation of the JAMS standards for arbitration procedures is not a magic eraser for contracted fee allocations that violate statutory rights. The fee allocation in the arbitration clause of the Set Forth Agreement plainly contravenes Wilson's statutory right to attorney's fees and costs if she prevails on multiple theories alleged in

23

her complaint. (*See* ECF No. 1, at 28–56.) As such, the fee allocation is against public policy and unenforceable. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19 (1985) (observing "that in the event the choice-of-forum and choice-of-law clauses operated in tandem as a prospective waiver of a party's right to pursue statutory remedies for antitrust violations, [the Court] would have little hesitation in condemning the agreement as against public policy"). Therefore, the court finds a significant degree of substantive unconscionability present in the fee provision of the Set Forth Agreement's arbitration clause.

Wilson also claims that the arbitration filing fee allocation requires the parties to split the administrative and arbitration fees and costs equally, in violation of the JAMS rules requiring the consumer to pay only $250 if she initiates arbitration against the company. (ECF No. 14 at 9 (citing "Consumer Minimum Standards," JAMS, https://www.jamsadr.com/consumer-minimum-standards).) The court has already determined that the fee provision is against public policy and unenforceable based on the prospective waiver of Wilson's statutory rights to attorney's fees and costs should she prevail. The fact that it also contravenes the JAMS rules is irrelevant to substantive unconscionability because, as the court explained with respect to the Level Debt Agreement: (1) an equal fee-sharing requirement does not facially favor one side over another; (2) arbitrators have the authority to interpret and apply the rules of their forums;

24

and (3) remedies exist under California law for parties who find the cost of arbitration inaccessible.

Finally, Wilson claims that it is substantively unconscionable to require her to arbitrate in San Diego County, California because it is cost prohibitive for someone like her who is on a fixed income and already struggling to pay her debts. (ECF No. 14 at 9.) The defendants argue that the location is reasonable because the office offers virtual arbitration, so she is not required to physically travel to San Diego. (ECF No. 16 at 6 (citing "San Diego," JAMS, https://www.jamsadr.com/locations/sandiego).) The court agrees with the defendants that the location provision is not substantively unconscionable.

### 4.3.3(b) Procedural Unconscionability

Having found a significant degree of substantive unconscionability present in the fee provision of the Set Forth Agreement's arbitration clause, it is necessary to determine whether the arbitration agreement is also procedurally unconscionable. Procedural unconscionability "is generally established by showing the agreement is a contract of adhesion, i.e., a 'standardized contract which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it.'" *Stoker v. Blue Origin, LLC*, 343 Cal. Rptr. 3d 756, 764 (Cal. App. 2026) (quoting *Ramirez v. Charter Communications, Inc.*, 551 P.3d 520, 530 (Cal. 2024). "Adhesion contracts are subject to scrutiny because they are 'not the result of freedom or equality of bargaining.' However, they remain valid and enforceable unless

25

the resisting party can also show that one or more of the contract's terms is substantively unconscionable or otherwise invalid." *Ramirez*, 551 P.3d at 530.

The defendants do not contest Wilson's argument that the Set Forth Agreement was a contract of adhesion. (*See* ECF No. 14 at 6, 12; ECF No. 16 at 7–8.) But they contend that Wilson fails to make any procedural unconscionability arguments about the arbitration agreement specifically; she attacks the parties' contract generally. (ECF No. 16 at 7–8.) They also claim that the availability of alternative debt settlement companies weighs against a finding of procedural unconscionability. (*See id.*)

"[T]he existence of market alternatives does not necessarily … preclude a finding of procedural unconscionability." *Diaz v. Thor Motor Coach, Inc.*, 341 Cal. Rptr. 3d 654, 663 (Cal. App. 2026). A consumer's ability to take their business elsewhere "may decrease the degree of unconscionable oppression," but it "does not necessarily negate such oppression." *Id.* "Oppression occurs where a contract involves lack of negotiation and meaningful choice." *Fuentes v. Empire Nissan, Inc.*, 582 P.3d 961, 968 (Cal. 2026) (citation omitted).

The defendants have not disputed Wilson's contention that she lacked any ability to negotiate the terms of the Set Forth Agreement. (*See* ECF No. 16; *see also* ECF No. 15, ¶¶ 32–35 (Wilson's declaration that she was not given an opportunity to negotiate any terms and that the Level Debt representative said she must sign all the documents where she was told if she wanted to participate in the program); *see also Fuentes*, 582 P.3d at 968

(finding that plaintiff was not given "a meaningful opportunity to review the agreement or ask questions about it, much less to negotiate its terms" weighed in favor of oppression and procedural unconscionability). Although Wilson had a choice not to enter into a contract with the defendants, the court finds there is at least some procedural unconscionability based on the lack of negotiability in the terms of the Set Forth Agreement.

### 4.3.3(c) Severability

Unlike the first two contracts, the Set Forth Agreement contains a severability clause stating, "If any provision of this Account Agreement shall be judicially determined to be invalid or unenforceable, the validity and enforceability of the remaining provisions shall not in any way be affected or impaired thereby." (ECF No. 13-6 at 12.) Although a severability clause is not dispositive under California law, it is evidence of the parties' intent to give effect to the valid provisions of the parties' contract, to the extent possible. *Ronderos*, 114 F.4th at 1099.

As discussed above, under California law in certain circumstances unlawful provisions may be severed from an otherwise enforceable agreement rather than invalidating the entire agreement. *See Armendariz*, 99 Cal. Rptr. 2d at 774–77. Ultimately, "[w]hen deciding whether to sever an unconscionable provision, [California] courts are to look to the various purposes of the contract.… If the central purpose of the contract is

tainted with illegality, then the contract as a whole cannot be enforced." *Ronderos*, 114 F.4th at 1099 (citations omitted).

The defendants argue that "[t]he fee structure is not a substantive term such that arbitration cannot proceed without it." (ECF No. 16 at 6.) The court agrees. The unlawful fee allocation can be severed from the remainder of the arbitration provision because it is not a central purpose of the agreement to arbitrate. *See McManus v. CIBC World Markets Corp.*, 134 Cal. Rptr. 2d 446, 465 (Cal. App. 2003) (severing unenforceable fee provision but enforcing agreement to arbitrate within two employment-related contracts because the "arbitration agreements [were] not "so 'permeated' with unconscionable provisions" that they could not be "saved").

Because Wilson's statutory claims potentially entitle her to recovery of both costs and attorney's fees, the entire paragraph regarding "Fees" in Section 16 on "Arbitration of Claims" (reproduced below for reference) shall be severed from the remainder of the Set Forth Agreement:

> Each side … agrees that all administrative and arbitration fees and costs, including the arbitrator's fees, shall be split equally between them. The attorney's fees and costs incurred shall be borne by the Parties, and the arbitrator shall not have the discretion to award the arbitration fees, attorney's fees, or any other costs to the prevailing Party in any such arbitration.

(ECF No. 13-6 at 12.)

Wilson "has failed to demonstrate the existence of additional substantive unconscionable provisions in the arbitration procedures or that the agreements [to

28

arbitrate] were permeated with unfairness." *McManus*, 134 Cal. Rptr. 2d at 465. Therefore, the arbitration provision in the Set Forth Agreement, with the unlawful portion severed, survives, and the court will grant the defendants' motion to compel arbitration thereunder.

**5. Conclusion**

The unlawful or unconscionable provisions in the arbitration clauses of the parties' three contracts are appropriately severed under the governing law of each contract. Wilson does not dispute electronically signing the contracts, that her lawsuit falls within the scope of the arbitration clauses, or that she has refused to arbitrate by bringing this action. She has not generated a genuine dispute of material fact challenging the enforceability of the arbitration clauses. Therefore, the defendants have established enforceable agreements to arbitrate under each contract.

**IT IS THEREFORE ORDERED** that the defendants' motion to compel arbitration (ECF No. 13) is **GRANTED**.

**IT IS FURTHER ORDERED** that this action is stayed and closed for administrative purposes. The parties shall notify this court in writing of the resolution of arbitration when one has been reached. Within thirty days following a final decision in the arbitration proceedings, any party may move to have this cause of action restored to this court's docket. If no such motion is filed within the specified time frame, those claims will be dismissed with prejudice.

29

Dated at Milwaukee, Wisconsin this 15th day of June, 2026.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge

30